## CITY OF DALLAS v. C. W. MOORE.

### Decided April 15, 1903.

**1.—Cities—Defective Streets—Degree of Care.**

Where there is not, in the charter of a city or its ordinances, any positive requirement that the city shall keep its streets in a reasonably safe condition, it is bound only to exercise ordinary care to keep them in a reasonably safe condition, and a charge omitting any reference to the exercise of ordinary care, and so making the duty absolute, was error.

**2.—Personal Injuries—Proximate Result.**

Where, in an action for personal injuries caused by a fall in a defective street, the evidence was conflicting as to whether all of plaintiff's injuries resulted from the fall, or were the result in part of diseased conditions already existing, the defendant was entitled to a charge that it could be held liable only for such injuries as were the direct and proximate result of the fall.

**3.—Same—Contributory Negligence—Cities.**

It was for the jury to determine under all the facts and circumstances whether or not plaintiff exercised the care of an ordinarily prudent person in walking over a street known to her to be defective, instead of adopting another street as her route of travel.

**4.—Same—Medical Expenses—Reasonableness.**

It was error for the jury, in an action for personal injuries, to allow items for medical attention and nursing where there was no evidence that such charges and expenses were reasonable.

**5.—Cities—Defective Streets—Notice—Evidence.**

Evidence was admissible to show that prior to the accident to plaintiff caused by defects in the street the city had notice of its defective condition at the point where the injury occurred, and that some one telephoned to the city hall that the street was in such condition as this tended to show a publicity or notoriety of the existence of the defect such as would indicate that the city had, or with reasonable diligence could have had, notice of such condition.

**6.—Same—Evidence.**

It was not error to exclude testimony relating to a defect in the street long subsequent to the time that plaintiff's injuries were received.

**7.—Personal Injuries to Wife—Evidence.**

Plaintiff could state the facts relating to his services in attending his wife after her injury, and the value of such services, or the time lost, but evidence of the general trouble he was put to by reason of her injuries, and of his impoverished condition, was not admissible.

**8.—Cities—Defect in Street—Notice.**

It is not necessary, in order to render a city liable for injury resulting from a defect in a street, that the city should have actual notice of such defect, since it is enough that those in charge, by the exercise of reasonable care and diligence, could have known thereof.

**9.—Same—Notice of Specific Defect.**

If there are apparent and obvious defects so near and closely related to a condition which is apparently safe, but in fact defective, that an investigation of the former would lead to a knowledge of the latter, then the city should take notice of such latter defect.

**10.—Same—Notice of Injury.**

Where the notice served upon the city was as follows: "Causing a partial dislocation of the joint between the coccyx and the sacrum, and rupturing the ligaments, causing a displacement of the right ovary"—this was sufficient to give notice of a prolapsus uteri or falling of the womb as a result of the injury.

- Appeal from the District Court of Dallas. Tried below before Hon. T. F. Nash.

*W. T. Henry* and *Jas. J. Collins,* for appellant.

*Henry P. Lawther,* for appellee.

FISHER, CHIEF JUSTICE.—This is an action against the city of Dallas to recover damages for injuries sustained by his wife on account of her falling on a street at an approach to a bridge. The negligence complained of is that the city permitted the approaches to the bridge on Main Street to be encroached upon and injured and undermined by the waters of a creek flowing under the bridge, to such an extent that the same was unsafe and unfit for travel, and that the city negligently suffered the bridge and the approaches to remain out of repair, all of which they had notice of.

It is also alleged that the western approach to the bridge, where the

plaintiff's wife was injured, in many places by reason of its being undermined by water contained openings and crevasses and holes; and though appearing unsafe and dangerous for those traveling by vehicles and horses, in many places presented a smooth and apparently hard and solid surface, and appeared safe for pedestrians; that plaintiff's wife was in ignorance that the bank and the approaches had become undermined, so as to be unsafe for pedestrians; that she was walking along the street and had crossed the bridge, and that she stepped off the same to the ground on its western approach on what appeared to be solid ground, but that the latter gave way and caved in, and caused her to fall and sustain the injuries alleged in her petition.

The court charged the jury as follows: "The law imposes upon the city of Dallas the duty of keeping its streets and bridges thereon in a reasonably safe condition for persons using its said streets and bridges thereon." In an examination of the charter of the city of Dallas granted by the Legislature we have discovered no provision requiring the city of Dallas to keep its streets in a safe or reasonably safe condition; nor is there in the record any ordinance of the city relating to the duty of the city in this respect. Such being the case, the city was only required to exercise ordinary care to keep its streets in a reasonably safe condition. The charge of the court as given might have led the jury to believe that the law imposed the duty upon the city to keep its streets in a reasonably safe condition, whether or not it had exercised care to accomplish that purpose.

From the facts, it appears that the approach to the bridge had been undermined by recent rains. The city would be charged with the duty of repairing the defective condition of the street within a reasonable time after it had knowledge of that condition, or within a reasonable time after it could and should have acquired knowledge that the washout had occurred. The city in this instance denies knowledge, and contends that it did not know of the defective condition of the street until after the accident. The evidence of knowledge upon the part of the city authorities charged with the duty of keeping the streets in condition is circumstantial, and there is some testimony tending to show that as soon as they obtained knowledge of its defective condition, they, within a reasonable time, went to work to repair the defect.

The charter of the city, as said before, does not impose upon the city the absolute burden to keep its streets at all times in safe condition, nor does it appear from the record that there is any ordinance upon that subject; and if such an ordinance had been exhibited, there might be some question as to whether it would be reasonable, and should in all instances be enforced,—but that is a question we do not decide, because it is not before us. But what we do hold is, that in the absence of any such positive requirement by law, the city is burdened only with the exercise of ordinary care in its efforts to keep its streets in a reasonably safe condition.

The city was not required to go to work upon this street and repair defects before it had notice thereof, or before it could, by the exercise of diligence, have ascertained that they existed; and the charge as given may have impressed the jury with the idea that the city was required, as soon as a defect existed, whether ascertained or not, to provide means to put the street in a reasonably safe condition, and that the duty required under such circumstances, would be more than that of ordinary care.

The twenty-second assignment of error complains of the refusal of the court to give in charge the following instruction requested by the city: "The jury is instructed that if the defendant should under the charge be held liable to the plaintiff in any amount for any injuries sustained by his wife, that the defendant could only be held responsible in law for such injuries, if any, as were the direct and proximate result of plaintiff's wife falling in the street, and if you find and believe that the wife of plaintiff was in bad health, and that her generative organs would naturally have been affected from child-bearing or other natural causes, or the condition of her health at the time of her injuries, notwithstanding the same may have been aggravated by the fall on the street, you can only find for plaintiff to the extent that her troubles were aggravated by such fall, and in your consideration of the liability of defendant you are absolutely restricted to this measure for the recovery of any damage, not being allowed to consider against the defendant, or to charge the defendant with, any pain or injury or suffering, if any, caused to plaintiff's wife by reason of other causes than the fall in the street."

There is much evidence in the record which tends to show that the prolapse of the womb and some of the other injuries found to exist were occasioned by child-bearing, or other natural causes. It was the right of the appellant, in view of this evidence, to insist that it should not be held responsible for injuries of this character, if they were not the proximate result of the accident to the plaintiff's wife she sustained from the fall. It was one of the main contentions of the plaintiff that the prolapse of the womb, together with the injuries to those organs with which it was closely associated, was occasioned by the fall in the street. This view was strongly combatted by the city, with much evidence to the effect that child-bearing and other natural causes may have occasioned the prolapse of the womb, and some of the injuries for which the city was sought to be held accountable. This defense, presented in the affirmative manner indicated by the requested charge, was entitled to be presented to the jury.

The twenty-third assignment of error complains of the refusal of the court to give to the jury the following special instruction requested by the city: "The jury is instructed that it is the duty of every person to exercise ordinary care for their own protection in the selection of a route in walking over the public streets, and it is the duty of every person to use reasonable care to select a safe street as the route to travel,

and to exercise ordinary care to avoid one known to be dangerous or unsafe by such person. If you should find and believe from the evidence that the western approach to the bridge where plaintiff's wife claims to have been injured was unsafe at the time of her injury, and that she was advised of its unsafe condition, then it is for you to determine from all the facts and circumstances whether or not the plaintiff exercised the care of an ordinarily prudent person in walking over said street instead of adopting another street as her route of travel, and if you find and believe that the plaintiff failed to exercise that degree of care in choosing Main Street as her route of travel and in not going over some other street, then your verdict will be for defendant."

There is some evidence in the record which tends to show that before the plaintiff's wife passed the bridge at the time of the accident, she knew of its defective condition; and there is some evidence which authorizes the inference that she could have reached the place where she desired to go by traveling over other streets in that vicinity. This charge is partly correct, and, in its main features, should have been given; but as to what would be an accurate statement of the law upon this subject, we refer to the case of Railway Co. v. Gasscamp, 69 Texas, 547.

The twenty-ninth assignment of error complains of the verdict of the jury in allowing any sum for medical attention and nursing, for the reason that there was no evidence to show that the expenses incurred by the plaintiff for this purpose were necessary and reasonable. The court in its charge instructed the jury that they could allow for the reasonable value of the medical care and attention and other care and nursing. There is evidence which tends to show the amount of some of these items submitted to the jury, but there is no evidence to the effect that such charges and expenses were reasonable.

We make the foregoing errors pointed out and discussed grounds for reversal, but before disposing of the case, there are some questions raised by other assignments which we will notice. We do not think the appellant's first, second, third, fourth, fifth and sixth assignments of error require discussion, as, in our opinion, they are not well taken.

Appellant, in its seventh assignment of error, complains of the admission of testimony to the effect that, prior to the accident, men working on the street were notified of the defective condition of the street at the place where the plaintiff's wife was injured. The ground of objection is that it does not appear that these men who were working on the street were in any manner connected with the street department of the city. There is some evidence which would warrant the jury to infer that the men to whom this notice was given were part of the street force of the city of Dallas.

The eighth assignment of error complains of the ruling of the court in admitting evidence that a telephone message, prior to the accident, was sent to the city hall, to the effect that the street at the place where

the plaintiff's wife was injured was in a defective condition. It does not appear that this message was delivered to the street superintendent, but some one at the city hall received the message. The evidence complained of under these two assignments of error we think was admissible, if for no other reason, as facts tending to show a publicity or notoriety of the existence of the defect in the street. Berry v. House, 1 Texas Civ. App., 563; 21 Am. and Eng. Enc. of Law, 586. This evidence, in connection with the other testimony bearing upon the subject as to the time that the defect existed, together with the knowledge of that fact possessed by many people, was proper to be considered as giving such public notoriety to the defect as might authorize the jury to infer that the city had notice, or could have obtained notice of the defect by the exercise of reasonable diligence.

There was no error in refusing to admit the testimony of witness Tate, which related to a defect in the street long subsequent to the time that the plaintiff's wife was injured.

Upon another trial the court should not admit the testimony complained of in appellant's tenth assignment of error. Plaintiff could state the facts relating to his services in attending his wife and the value of such services, or the time lost, but evidence of the general trouble that he was put to by reason of her injuries was not admissible.

So much of the testimony as relates to the impoverished condition of the plaintiff, as complained of in the eleventh assignment of error, was not admissible. He had the right to testify as to the value of his time and services devoted to his wife, and the reasonable amount of drug bills, nurse hire and hospital bills that were expended.

In a general way we will indicate our views upon the points raised in appellant's first and second propositions under its fourteenth, fifteenth, sixteenth, seventeenth and eighteenth assignments of error. These propositions are as follows:

"1. Notice of a dangerous condition of a street at a certain locality does not necessarily charge the city with notice of a specific defect causing an injury, unless it appears uncontrovertibly from the evidence that the specific defect must have been discovered from a knowledge of a general defective condition, or that the specific defect was necessarily connected with the other defects, or arose from the same general cause.

"2. It is error for the court to assume that a specific latent defect in a street arose from the same cause as other apparent defects at the same locality, or that knowledge of the other defects causing a dangerous condition in the street included knowledge of a specific latent defect, and the other open and obvious defects, or had there been a controversy in such evidence it is still a matter to be submitted to and determined by the jury and not assumed by the court."

Actual notice of the defect and the dangerous condition of the street upon the part of the city was not necessary to be shown in order to hold it liable. If those agents of the city who are charged with super-

vision, control and superintendence of the streets could, by the exercise of reasonable care and diligence, have known of the defective condition, the city will be charged. If there are apparent and obvious defects so near and closely related to a condition which is apparently safe but in fact defective that an investigation of the former 'would lead to a knowledge of the latter, then it may be said that the city should take notice of such latter defect. Whether such conditions do or do not exist, and what effect they would have in determining that knowledge of one defect would necessarily lead to knowledge of another, are ordinarily questions of fact to be submitted to the jury.

The charge complained of in these propositions does not assume that the defect was latent, but clearly instructs the jury that defendant's liability would depend upon the unsafe and dangerous condition of the street, which condition must be of such a nature that the city could discover it by the exercise of reasonable care and diligence in time to have repaired the same before the injury to the plaintiff's wife. This charge we understand to be the law. It is not predicated upon the assumption that the dangerous condition at the place where the accident occurred, although latent, would make the city liable, if this dangerous place could have been discovered by reason of the knowledge of some other remote dangerous condition in the street, for the charge directly instructs the jury that they must find that the dangerous condition existed at the place where the plaintiff's wife was injured, and that this could have been discovered by the exercise of reasonable care.

What we have just said in effect disposes of the nineteenth and twentieth assignments of error. There was no error in refusing the charge as set out under the twenty-fourth and twenty-sixth assignments of error.

In disposing of the twenty-seventh assignment of error, we would suggest that, in view of the doctrine announced in the case of Gulf C. & S. F. Ry. Co. v. Hill, 95 Texas 639, it would be best for the trial court to omit a charge upon the burden of proof upon the subject of contributory negligence.

The appellant, in its twenty-fifth assignment of error, complains of the refusal of the court to give its tenth special charge, to the effect that the jury should disregard any evidence as to a prolapse of the womb, for the reason that such injury was not included in the notice served on the city of Dallas. The notice served upon the city is as follows: "Causing a partial dislocation of the joint between the coccyx and the sacrum, and rupturing the ligaments, causing a displacement of the right ovary, producing great pain and inflammation; causing more or less concussion of the spine, together with internal injuries, all of which will result in the permanent injury, disability and ill health of the said Hattie S. Moore."

There is a provision in the charter of the city which requires notice to be given of the cause and extent of the injuries. The purpose of

requiring notice to be given to the city is in order that the cause of the injuries and their nature and extent may be, within a seasonable time after the accident, investigated, so that it may ascertain a knowledge of the true facts and merits of the claim. It is almost impossible in every case of this nature to accurately designate all of the injuries that may arise, for some, which might be the proximate result of the accident, might not be developed until long after the time that the law requires notice to be given. There can be no technical or fixed rule in determining when a notice is sufficient. All that should be required is that it is sufficient if it, in a general way, apprises the defendant of the nature and general extent of the injuries suffered. Telegraph Co. v. Brown, 84 Texas, 57.

It is apparent from the evidence that the prolapse of the uterus was one of the most severe and permanent injuries sought to be established by the plaintiff. It will be observed that the notice does not state that a falling of the uterus or womb was one of the injuries sustained as a result of the accident, but it does state that the ligaments were ruptured, causing a displacement of the right ovary. The word rupture means to break apart or to separate the parts, and we understand by the expression "rupturing the ligaments," as stated in the notice, that the ligaments associated with the ovaries broke apart or separated, thereby causing a displacement of the right ovary. If from these injuries it would necessarily and naturally follow that injuries to the womb would result, then we think that notice of such injuries would be reasonably sufficient to apprise the defendant of the fact that the womb was more than likely injured.

Covering the uterus the peritoneum produces on each side a fold, which is the broad ligament of the uterus, and which is directed to the sides of the pelvic cavity. In a measure the uterus is inclosed in this ligament, which, to a great extent, serves to maintain the former in position. The ovaries are attached to the broad ligament along the anterior border, and along the upper border of the broad ligament run the oviducts or fallopian tubes, which serve as a connection between the ovaries and the uterus. Projecting just above the oviducts is the fundus of the uterus, to which is attached the ovarian ligament. This ligament, as well as the fundus, and that portion of the broad ligament to which the ovaries are attached is located in the upper or near the upper part of the uterus. Consequently, a rupture of these ligaments and a prolapse or displacement of the ovaries would more than likely be accompanied with a similar prolapse of the uterus. It may be possible that a fall of the latter would not, in all cases, be a necessary result of a giving way of the ligaments and a displacement of the ovaries; but it is so likely to happen that it may be said that it is one of the natural and probable consequences that might result. And when it is contended that no notice was given of the prolapse of the uterus, the answer may be that an injury to that organ may and should be inferred, because such

injury is one of the consequences which would almost necessarily follow from a displacement of the ovaries and a rupture of the ligaments, especially the broad ligament, which is one of the main supports of the uterus. There is such a close relation and affinity between the uterus on the one hand and the broad ligament and ovarian ligament on the other, that rupture of the latter with displacement of the ovaries, would, excluding a bare possibility, involve and include the uterus; and when injuries involving a displacement and rupture of the former organs are alleged, it should arouse a contemplation of the existence of injuries to the uterus. Therefore, we are of the opinion that the notice was sufficient to embrace in the injuries a prolapsus of the womb.

For the reasons stated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*