## ALASKA TREADWELL GOLD MINING CO. v. MUGFORD.

(Circuit Court of Appeals, Ninth Circuit. February 7, 1921.)

No. 3492.

1. **Mines and minerals ⟨⟩118—Mining company held liable for injuries from defect in club house approach on government land.**

A mining company, which built a club house with a platform on piles in front of it, which was used as a public passageway, and assumed and exercised authority and control over it and its repair, although the title to the ground and the street was in the United States, *held* liable for an injury to a person who fell through a hole in the platform, due to a rotten and defective plank, while passing over it in the dark during an entertainment in the club house.

2. **Negligence ⟨⟩136(27)—Contributory negligence, in failing to avoid known danger in walk, held for jury.**

Where plaintiff was injured by falling through a hole, caused by a broken plank, in a platform built and maintained by defendant and used as a public way, the fact that she knew generally that the platform was

not in good condition, though she did not know of the hole, *held* not to charge her with contributory negligence as matter of law, but that the question was for the jury.

3. **Negligence** ☜62(3)—**Concurring act of another does not relieve from liability.**

Where plaintiff was injured by falling through a platform maintained by defendant for use by the public, where a rotten and defective plank had been broken, leaving a hole, defendant *held* not relieved from liability by the fact that the plank was broken without its knowledge by a third person, who jumped on it; defendant's negligence in leaving the unsafe plank in the platform being the proximate cause of the injury.

4. **Appeal and error** ☜231(9)—**General objections to instructions on damages insufficient.**

A general objection to a charge on the measure of damages *held* insufficient to authorize review, where counsel refused to state any specific ground.

In Error to the District Court of the United States for Division No. 1 of the District of Alaska; Robert W. Jennings, Judge.

Action at law by M'ay Mugford against the Alaska Treadwell Gold Mining Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Action in damages for personal injuries sustained by plaintiff in falling through a hole in a plank platform, which rested on piling, in front of a club house controlled and operated by the Alaska Treadwell Gold Mining Company, for the benefit of the employés of that company and those of two other mining companies whose properties adjoined the Treadwell property. Verdict for plaintiff. Defendant brought writ of error. There was evidence to show these facts:

The Treadwell Company at its expense built a club house, and a voluntary association of its employés, known as the Treadwell Club, was organized for general recreation purposes. The company collected a fixed sum from each member of the association, with the intention of reimbursing itself for the moneys advanced. Officers of the association were chosen from among the members, but the company acted as banker for the club, and employed and paid a surface inspector, whose duty it was to inspect platforms and side-walks. In front of the building, approximately 50 feet away, there was a railroad track, and running along the track, and parallel with it, was a board platform set on piles. This was used as a thoroughfare, and for ingress and egress to and from the club house. The building was built on the tide flat, below the line of ordinary high tide, a short distance back from the walk, and practically parallel with it. One end of the building was approximately 20 feet from the walk; the other end somewhat farther. Between the walk and the building there was a plank platform built on piling.

On the night of the accident the Treadwell Fire Department, a voluntary organization, was giving a dance at the club house, at which plaintiff and her brother were guests. About midnight, while she and her brother were going from the building, plaintiff, not knowing of any hole in the boards, followed others directly ahead of her, and in stepping down from the doorstep to the platform fell into a hole to the beach, 10 or 12 feet below, and was injured. There was evidence that the hole was made during the same evening by one of the men guests, who, when leaving the club house, made a running jump, and came down on the board, and cracked it. Immediately afterwards other guests in leaving stepped on the cracked board, and it broke, leaving the hole through which plaintiff afterwards fell. There was no light at the door through which plaintiff and her brother went out. Plaintiff testified that she was more or less familiar with the walk, and had frequently been to the club house; that prior to her injury she had observed the "rotten condition" of the whole platform; that there were little patches on the boards that were

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

rotted, and depressions in boards that looked as if they were ready to break; that she had not seen any repairs made during three years before the accident. The plank upon which plaintiff stepped was broken and unsound, and "the break appeared crumbling and rotten." Some patches had been put upon the platform since it had been built, 10 or 12 years before, and the evidence tended to show that because of the rotten condition of the plank it broke when some one jumped upon it before plaintiff left the ball room. The plank was 3 inches thick and from 5 to 6 feet long, was old, and, while there had been patches or repairs made in various places of the platform, the broken plank had not been replaced since the platform was constructed.

Hellenthal & Hellenthal, of Juneau, Alaska, and Curtis H. Lindley, of San Francisco, Cal., for plaintiff in error.

Roden & Dawes, of Juneau, Alaska, and A. H. Ziegler, of Ketchikan, Alaska, for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). [1] It is argued that the court should have directed a verdict for the defendant. One ground urged is that, the dance having been given by the fire department and Miss Mugford having been a guest of the fire department, she was a licensee as to the Treadwell Club and the Treadwell Mining Company. It is also said that the evidence did not show that the walk proper was a public highway, or that the platform which connected the walk with the club house was a public highway. Neither ground is well taken, for the testimony was that the general superintendent of the Mining Company employed the manager of the club building, that the walk upon which people went in going into and coming out of the club house was used as a thoroughfare, that the defendant company made repairs on the thoroughfare, that at different times its employés repaired the walk in front of the club, and that the assistant superintendent of the Mining Company gave instructions to the manager of the club. The evidence justified the conclusion that it was a part of the duty of the superintendent to supervise generally the surface work, and that with the head carpenter he inspected the platform and directed a number of repairs to be made. There was also the evidence of the injured woman that, soon after the accident, she talked with the assistant superintendent of the defendant company, and that, after explaining to him how it happened, he replied that he had ordered the place fixed and thought it was. The court was right in adopting the theory that, if it were satisfactorily established that the platform was used as a public passageway and that the Mining Company had assumed and exercised authority and control over it and the repair of it, there arose a duty on the part of the company to the public and such duty became coextensive with the inducement or implied invitation. Shearman & Redfield on Negligence, § 706; Rachmel v. Clark, 205 Pa. 314, 54 Atl. 1027, 62 L. R. A. 959; Plummer v. Dill, 156 Mass. 426, 31 N. E. 128, 32 Am. St. Rep. 463.

With respect to responsibility for the control and supervision over the platform and street, there was evidence that, although the fee-simple title to the surface of the street was in the United States government, the Mining Company had possession of the surface, had

erected its buildings thereon, and connected them with the town of Douglas by means of streets, one of which passed in front of the club house and was used by the public. The agents of the Mining Company exercised supervision and care over the portion of the street in front of and about the club house, and when a board looked as if it were decayed the agents of the company would test it, and repair it, if necessary. It also appeared that it was the duty of an employé of the defendant to inspect the platform, walks, and all surface work, and that he performed such duties from time to time. There was evidence which tended strongly to show that defendant did not fulfill its obligation by keeping the premises in reasonably safe repair. Witnesses said that the plank which broke was rotten, and that since the platform had been built, some 10 or 12 years before the accident, it had been repaired and patched in places, but this particular plank had not been replaced. Whether the plank would have broken, had it not been in the rotten condition in which witnesses testified it was, became a question for the jury.

[2] It is said that even though the platform was owned and maintained by the Mining Company and used as a thoroughfare, and that even if plaintiff below was rightfully there, she was guilty of contributory negligence. Miss Mugford testified that she knew generally that the platform was in poor and dilapidated condition, but that she knew nothing of the hole, and was not looking for one at the point where she stepped off the platform. It cannot be said that she was obliged to abandon the use of the walk merely because she knew in a general way that the street was generally in bad condition. Of course, she was obliged to use a care related to the dangers known to her, or of which she ought reasonably to have known; but she did not know of the hole at the point, and it could not be said she ought to have known of it. The court properly declined to say as a matter of law that she was culpable, and submitted the question to the jury. Bassett v. Fish, 75 N. Y. 303.

[3] It is next urged that, even if the defendant company were negligent with respect to the repairs of the platform, something unusual happened in the nature of an independent cause, without which the accident would not have happened, and that the proximate cause was the fact that two men had jumped upon the plank, and had broken it, and that the Mining Company, not being to blame, cannot be held responsible. But the rule is well settled that, where an injury has resulted because of the concurrence of several acts or conditions, one of which is the wrongful act or omission of a defendant, and thus the injury results, but would not have been produced but for such wrongful act or omission, then such act or omission is the proximate cause of the injury, provided the injury be one which might reasonably have been anticipated as a natural consequence of the act or omission. Shearman & Redfield on Negligence, § 346; Ring v. Cohoes, 77 N. Y. 83, 33 Am. Rep. 574; Campbell v. Stillwater, 32 Minn. 308, 20 N. W. 321, 50 Am. Rep. 567.

Among certain instructions complained of was one upon the liability of an owner of a highway. The court in part said that in this

case, if the way became public by consent or invitation generally held out by the Mining Company, then the duty of the Treadwell Company was to use ordinary care to see that the highway was reasonably safe for the purposes of a highway. Inasmuch as the evidence tended to show that the space or place about which the accident occurred was used as a highway, we fail to find error in the instruction as given.

The court also charged that the defendant would not be held "to warrant the plank to be strong enough to bear loads of greater weight than it was reasonably to be anticipated would or might be put upon it in connection with or incidental to its use." In criticism the plaintiff in error argues that the court erred in implying that the defendant was called upon to "warrant" the platform. But, as the court throughout its instructions carefully charged that the law imposed no greater obligation upon the defendant than to use ordinary care in keeping its walks in reasonably safe condition, surely the use of the word "warrant" could not have been misunderstood by the jury.

The court instructed that if the jury found from the evidence that the defective condition of the platform, if found to be defective, had existed for such length of time that the agents or officers of the company, using reasonable care and diligence, would have known about it, then "that is the same as if they did actually know about it." It is said that the court should have defined the circumstances under which there could be such a thing as constructive knowledge, if such knowledge could exist at all. The principle, however, is a familiar one that actual notice of the defective and dangerous condition of a street upon the part of a city is not necessary to be shown in order to hold it liable, for if the agents of the city who are charged with the supervision and control of the streets could, by exercise of reasonable care and diligence, have known of the defective condition, liability may follow. Dallas v. Moore, 32 Tex. Civ. App. 230, 74 S. W. 95. But as the record is made up the plaintiff in error cannot complain, for there was no request for a further instruction upon the point now made.

[4] Upon the measure of damages the court instructed that if, from the evidence, defendant was found guilty of negligence, and that plaintiff was not guilty of contributory negligence, then she was entitled to recover such damages "as would fairly and reasonably compensate her for the injury which she has suffered, if any," and the court enumerated, as elements of damages, pain and suffering, if any, injury to health, to nervous system, and to general condition, as may have been shown from the evidence, but said there could be no damages by way of punishment or smart money. After the reading of the charge, plaintiff in error "objected" to that portion which related to "the measure of damages as not stating the law upon the subject." The court asked counsel for the defendant "in what respect" he maintained that the instruction on the measure of damages was incorrect, to which counsel replied, "That is just a general exception to that." The court then said, "You won't point out anything," to which counsel replied, "No, I think not." Counsel, having declined to state any specific ob-

jection to the statement of the law as made by the trial judge, is not in a position to contend that there was error in the law as laid down.

It is argued that, in the light of the evidence, the verdict must have been arrived at as a result of passion and prejudice. But, if the evidence of plaintiff below was credible, she was seriously hurt. The accident occurred more than three years before the trial, and there was testimony that, although she had worked and supported herself before the injury, she had not been able to earn any money afterwards, that her nervous system had been badly shattered, that four of her ribs had been disconnected from the vertebræ as a result of the injury, that she had lost in weight, and that because of the dislocated ribs she suffered much pain, through irritation of the nerves in the region of the ribs.

We find no error, and affirm the judgment.

Affirmed.