**CITY OF HOUSTON, Appellant,**

v.

**Mrs. Neva U. GLOVER, Appellee.**

No. 3780.

Court of Civil Appeals of Texas.

Waco.

Feb. 22, 1962.

Reformed and Affirmed March 1, 1962.

Rehearing Denied March 22, 1962.

R. H. Burks, City Atty., Edgar Pfeil, Sr., Asst. City Atty., Houston, for appellant.

Cire & Jamail, Houston, for appellee.

McDONALD, Chief Justice.

This is a damage suit by the widow of Max E. Glover, against the City of Houston, for the death of her husband, 11 days after he drove his car into a tree on an esplanade ('or tree island) located in the middle of Sunset Boulevard in Houston, on 15 April 1957.

A schematic diagram of the esplanade or tree island is believed to be helpful.

Trial was to a jury which, in answer to issues submitted, found:

1) The City of Houston was negligent in failing to remove the tree prior to 15 April 1957.

2) Such negligence was a proximate cause of the collision.

3) The City of Houston failed to provide such warning devices around the trees as would have been provided by a reasonably prudent person in the exercise of ordinary care under the circumstances.

4) Such failure was a proximate cause of the collision.

5) The trees constituted a condition inherently dangerous to persons traveling Sunset Boulevard.

6) Such condition was a proximate cause of the collision.

7) Prior to this collision the City of Houston had notice of such condition.

8) The accident was not the result of an unavoidable accident.

8A) Max E. Glover was not driving his car at an excessive rate of speed.

9) Max E. Glover did not fail to maintain proper control over his car.

11) Max E. Glover did not fail to keep a proper lookout.

13) Max E. Glover was not under the influence of intoxicating beverages.

15) *$50,000.* will fairly compensate the plaintiff widow for her damages by reason of the death of Max E. Glover.

16) *$26,000.* will fairly compensate the Estate of Max E. Glover for physical pain, suffering and mental anguish sustained by deceased prior to his death.

17) *$4000.* will fairly compensate the plaintiff for medical and funeral bills, necessarily incurred by Max E. Glover.

The Trial Court entered judgment for plaintiff on the verdict, for $80,000. Defendant City appeals on 78 points, contending:

1) The failure on the part of the City of Houston to remove the trees prior to the collision is the exercise of a governmental function, in the performance of which the City is not liable for negligence.

2) There is no evidence, or insufficient evidence, to support the jury's findings to issues 1, 2, 3, 4, 5, 6 and 7.

3) Plaintiff's husband, Max E. Glover, was guilty of contributory negligence as a matter of law.

4) Plaintiff did not comply with the City of Houston's charter in making claim for the "pain and suffering" of Max E. Glover (Issue 16); plead same for the first time in an amended pleading filed more than 2 years after the accrual of same; and presented no evidence in support of same.

5) The Trial Court erred in admitting the testimony of Mayor Lewis Cutrer; and City Toxicologist Bob Crawford.

6) Plantiff's counsel made improper argument to the jury.

7) The award of the jury in issues 15, 16 and 17 is not supported by the evidence; and/or is excessive.

■ Defendant's 1st contention is that the failure on the part of the City to remove the trees prior to the collision, is the exercise of a governmental function, in the performance of which the City is not liable for negligence. Cities in the building, maintenance and operation of streets are engaged in a *proprietary* function and are not performing a governmental function so as to enjoy the same exemption from liability as is accorded to States and Counties in the building and maintenance of public roads. Cities are therefore liable for negligence in the maintenance of their streets, a proprietary function. Lebohm v. City of Galveston, 154 Tex. 192, 275 S.W. 2d 951; City of Abilene v. Fillmon, CCA, n. r. e., 342 S.W.2d 227.

■ Defendant's 2nd contention is that there is no evidence, or insufficient evidence, to support the jury's answers to issues 1 through 7. Such issues found that the City was negligent in failing to remove the trees prior to the collision; negligent in failing to provide proper warning devices around the trees; that the trees constituted an inherently dangerous condition to persons travelling the street; that the City had notice of such condition; that the negligence and the dangerous condition were all proximate causes of the accident.

The record reflects that at about 8:15 P. M. on 15 April 1957, Max E. Glover struck a tree on a tree island located in the middle of Sunset Boulevard. It had been raining. Eleven days later Glover died of massive chest injuries received in the accident. The tree and the tree island are in the middle of the street and had been there for 40 years. Cars travelling west have to make a sharp turn of about 45 degrees in order to avoid hitting the tree. There were many other trees in the area; they formed a continuous row on each side of the street. The witness Maier, the City's Director of Traffic, a qualified engineer whose experience was primarily with traffic design and related to traffic safety, testified that the tree shouldn't be there; it served no purpose and does not comport with current traffic design; the tree with no lights on it would be less discernible, and as much of an obstruction as an automobile parked in the middle of the street with no lights; the tree blended in with the rest of the landscape at night; serious accidents in the past had occurred involving the trees; the only warning device was a "Keep Right"

sign very close to the tree itself and 3 reflector buttons on the tree; this had been the sole warning device for at least 10 years; the sign was knocked down frequently and he had personally reported the condition on several occasions; in 1952 he made a strong recommendation that the trees be removed; the City could not and did not have regular inspections to insure the warning signs were in proper repair; those in authority and possessed with power to remedy the situation had knowledge of the serious accidents which had occurred because of the presence of the trees. Mayor Cutrer of the City of Houston testified that he had knowledge of the dangerous condition and had stated publicly the trees constituted a traffic hazard. There is evidence to the effect that the "Keep Right" sign was lying on the grass after the accident and that the tree Glover struck had no reflectors on it. The police officer witness for the City estimated Glover's speed at 25 to 30 miles per hour. The witness Dr. Greer (a medical doctor) was seriously injured in 1956 when he, driving carefully with his lights on and going slow, struck the "tree island." Dr. Greer described the scene as an "optical illusion." There was evidence of other accidents caused by cars running into this tree island. We think the evidence sufficient and ample to support the jury's answers to issues 1 through 7.

■ Contention 3 is that plaintiff's husband was guilty of contributory negligence as a matter of law. The jury found that he was not intoxicated; that he was not driving at an excessive rate of speed; that he did not fail to keep a proper lookout or fail to maintain proper control over his car. As noted, the City's police officer who investigated the accident testified that Glover was driving 25 to 30 miles per hour. The City's toxicologist who tested a sample of deceased's blood, testified that his blood did not contain alcohol sufficient to constitute intoxication. Contributory negligence is ordinarily a question for the jury. The jury acquitted Glover. In any event, the record before us does not sustain the contention that Glover was guilty of contributory negligence as a matter of law.

■ In contention 4, the City says that the claim filed with the City (as a predicate to suit) did not claim "pain and suffering"; and that such was not plead until more than 2 years following the accident, in an amended petition. Plaintiff filed a claim with the City, stating that deceased was driving his automobile on 15 April 1957 and crashed into the tree; that he received serious injuries which resulted in his death on 26 April 1957. We think the notice filed was sufficient to apprise the City of this element of damages. See City of Dallas v. Moore, 32 Tex.Civ.App. 230, (n. w. h.) 74 S.W. 95; City of Port Arthur v. Wallace, CCA, 167 S.W.2d 549, aff'd. 141 Tex. 201, 171 S.W.2d 480.

■ The amended pleading filed by plaintiff relates back to the filing of the original petition. Cleveland v. Ward, 116 Tex. 1, 285 S.W. 1063. In the substitution of a plaintiff suing in a representative capacity for plaintiff suing as individual, the claim remains the same and the filing of the original petition tolls the Statute of Limitation. 2 McDonald Civil Practice p. 753. The record reflects that Glover was conscious for 11 days; that his windpipe was split open; and that he suffered pain. The evidence is ample to support the finding.

■ Contention 5 is that the Trial Court erred in admitting the testimony of Mayor Cutrer and City Toxicologist Crawford, as adverse witnesses. The witness Cutrer was Mayor of the City of Houston and the witness Crawford was Chemist and Toxicologist for the City of Houston. The suit is against the City of Houston. The Trial Court had the right to treat both witnesses as adverse witnesses. See Rule 182, Texas Rules of Civil Procedure; City of Waco v. Criswell, CCA (n. w. h.) 141 S.W.2d 1046.

Contention 6 complains that plaintiff's counsel made improper argument to the

jury. Without detailing the argument, we have carefully reviewed same and find no merit in the contention. See Lantex Const. Co. v. Lejsal, CCA, n. r. e., 315 S.W.2d 177.

 Defendant's final contention is that the award of the jury in issues 15, 16 and 17 is not supported by the evidence and/or is excessive. The jury awarded plaintiff $50,000 for her damages for loss of support, contribution etc. The record reflects deceased was making some $5600 per year, and had a life expectancy of 15.13 years. He contributed at least $3600 per year to plaintiff plus doing yard work, painting the house, and repair work about the home.

The testimony on the medical and funeral bills affirmatively adds up to $4300. (after excluding nurses' and anesthesiologists' bills because reasonableness was not proved.) The jury awarded $26,000. for the physical pain and suffering and mental anguish of the deceased during the 11 days he lay conscious in the hospital, before his death.

From the record as a whole, we think that the $26,000. awarded for the physical pain and suffering and mental anguish of the deceased is excessive in the amount of $15,-000., and that this cause should be reversed for this reason only. However, plaintiff is given 10 days from this date to file remittitur of $15,000. Rule 440 T.R.C.P. If such remittitur is filed within the time provided, the judgment of the Trial Court will be reformed and affirmed.

All of defendant's points and contentions (other than above) have been considered and are overruled.

Reversed and remanded.

### AFTER REMITTITUR

Plaintiff having filed remittitur in the amount of $15,000 as suggested by this court, the judgment entered is set aside, and judgment here entered reforming the judgment of the Trial Court in conformity with said remittitur, and as reformed the judgment of the Trial Court is affirmed.

Costs of appeal to date of remittitur are assessed one-half against plaintiff and one-half against defendant.

Reformed and affirmed.