**CITY OF HOUSTON, Appellant,**

v.

**John MOORE, Appellee.**

No. 14492.

Court of Civil Appeals of Texas.

Houston.

April 8, 1965.

Rehearing Denied April 29, 1965.

546

John Wildenthal, Jr., City Atty., Edgar Pfeil, Senior Asst. City Atty., Herbert M. Beazley, Asst. City Atty., Houston, for appellant.

Robert L. Steely, Houston, Brown, Kronzer, Abraham, Watkins & Steely, Houston, of counsel, for appellee.

WERLEIN, Justice.

This suit was brought by appellee, John Moore, against the City of Houston to recover damages for personal injuries sustained by him as a result of a collision between his automobile and appellant's road maintainer, when the maintainer undertook to make a right turn into Mangum Road from West 43rd Street in Houston, Texas, on June 13, 1961. Judgment was rendered on the jury verdict in favor of appellee for the total sum of $47,200.00.

The evidence shows that 43rd Street has two lanes for traffic moving in a westerly direction, and two lanes for traffic moving in an easterly direction, with an esplanade separating the east and west bound traffic. 43rd Street intersects Mangum Road at right angles. At the time in question appellee was driving his car in company with his wife in a westerly direction, in the right or curb lane of 43rd Street. Appellee testified that they were traveling about 15 to 20 miles per hour; that appellant's grader or maintainer, which was also traveling in a westerly direction but in the left-hand lane, passed them when they were "between half and three-fourths of the way up the block toward Mangum"; that he intended to make a right-hand turn on Mangum Road; that when he was a short distance from the intersection of 43rd Street and Mangum, he saw appellant's maintainer move toward the left, at which time he applied his brakes to slow down; that instead of making a left-hand turn, however, the maintainer made a sudden turn to the right to enter Mangum Road and collided with appellee's automobile, wedging it between the maintainer and the utility pole which was to the right of the right lane of 43rd Street and at its intersection with Mangum Road; and that the front of the rear dual wheels of the maintainer struck his automobile on its left side, and pushed it into the utility pole. Appellee's wife substantiated his testimony. Both testified there were no parked cars in the right lane in which they were driving and that no signal of any kind was given by the maintainer to indicate a turn in any direction.

Mr. Herring, the driver of the maintainer, testified in substance that he passed a parked car about 150 feet from the intersection of Mangum Road; that when he pulled around the car he looked back to see if anything was there and then gave a signal; that he stuck his right hand out when he was approximately 100 feet from the intersection, but pulled it back in so that he could steer with his left hand and lean the wheels of the maintainer with his right hand; that the maintainer had no signal device of any kind, and no rear-view mirror; that he never saw appellee's automobile until it was wedged in between the maintainer and the utility pole, and never applied his brakes until then; that the maintainer had two wheels at the front end, and four wheels at the back, and that he could steer it and also lean the wheels so as to make a sharp turn; that its driver's seat was higher than the top of an automobile; and that the cab where he sat had windows all around it.

In answer to the special issues the jury found that the driver of the maintainer was guilty of five acts of negligence, each of which was a proximate cause of the collision, and that appellee was not guilty of contributory negligence. The jury found that the operator of the maintainer changed the course and direction of the movement of the maintainer without first ascertaining that such movement could be made in safety; that he failed to make his approach for a right turn in the right-hand lane of West 43rd Street; that he failed to give a proper signal of his intention to turn right continuously during not less than the last 100 feet traveled by the maintainer before turning; that the maintainer was not equipped with a lamp or lamps or mechanical signal devices capable of clearly indicating an intention to turn either to the right or to the left; and that the operator of the maintainer failed to make such reduction in its speed before attempting a right turn as a reasonably prudent person in the exercise of ordinary care would have made. The jury also found in effect that appellee did not fail to keep a proper lookout, and that he did not fail to have his car under proper control.

We have carefully read the entire statement of facts and are of the opinion that the jury's findings are supported by evidence and are not so against the great weight and preponderance of the evidence as to be clearly wrong or unjust. The driver of the maintainer testified that he was some six feet from the right-hand curb of 43rd Street as he approached the intersection; that he had not looked back subsequent to the time he put his right hand out momentarily and then pulled it back, which was 100 feet from the intersection, and that he was not giving any continuous signal as he approached the intersection. He also testified that he inclined his front wheels so he could make a sharp turn and that he did not slow down, and did not apply his brakes until the impact. It is our view that none of the special issues are objectionable as being on the weight of the evidence. No

exceptions were filed to appellee's general pleading of negligence. Hence the court was authorized to submit any issues of negligence raised by the evidence. Agnew v. Coleman County Electric Cooperative, 1954, 153 Tex. 587, 272 S.W.2d 877; Kainer v. Walker, Tex.Sup.1964, 377 S.W.2d 613. It may be observed here that substantially the same issue as Special Issue No. 1 has been approved in Gordon v. Levias, Tex.Civ. App., 356 S.W.2d 462, and Manley v. Wilson, Tex.Civ.App., 313 S.W.2d 339, writ ref., n. r. e.

There is no merit in appellant's contention that appellee was guilty of negligence as a matter of law in failing to have his automobile under proper control and in failing to keep a proper lookout. There are numerous cases that hold that in the case of moving motor vehicle collisions the ultimate issues of fact are for the jury in determining whether plaintiff has been guilty of contributory negligence. Biggers v. Continental Bus System, Inc., 1957, 157 Tex. 351, 303 S.W.2d 359; Bardwell v. Anderson, Tex.Civ.App., 325 S.W.2d 929, writ ref., n. r. e.; City of Houston v. Glover, Tex.Civ.App., 355 S.W.2d 757, writ ref., n. r. e.; Alamo Motor Lines v. Maldonado, Tex.Civ.App., 271 S.W.2d 693, writ ref., n. r. e.

Appellant complains that the trial court erred in refusing to submit its requested Special Issues Nos. 15 and 16 inquiring as to whether appellee was operating his automobile at a negligent rate of speed and if so whether such negligence was a proximate cause of the collision in question. There is no evidence of excessive speed on the part of appellee other than the testimony of a police officer that the car skidded 38 feet. However, assuming that there was sufficient evidence to raise the issue, it was properly refused because it was included in the general issue of proper control. Schuhmacher Co. v. Holcomb, Tex.Civ.App., 174 S.W.2d 637, aff'd 142 Tex. 332, 177 S.W.2d 951; Northeast Texas Motor Lines v. Hodges, 138 Tex. 280,

158 S.W.2d 487; Fullingim v. Dunaway, Tex.Civ.App., 267 S.W.2d 483; Shiflett v. Bennett Printing Co., Tex.Civ.App., 330 S.W.2d 220. It should be noted here that appellant did not except to the submission of the issue on proper control as it could have done. See the recent ruling of our Supreme Court in Barclay v. Pitts Sand & Gravel Co., Texas Supreme Court, 1965, 387 S.W.2d 644. Had it done so, the court would in all probability have submitted the requested issues on speed.

■ Appellant next complains that the court erred in refusing to submit an issue on unavoidable accident. It is the contention of appellant that there was a parked car in the right-hand lane of 43rd Street about 150 feet from its intersection with Mangum Road, and that such car in some manner interfered with the rear view of the driver of the maintainer when he looked back to see if there was anything coming behind him. The driver did not testify that his view was interfered with by a parked car. The testimony of the driver of the maintainer shows that at the time he looked back he was passing or had just passed the parked car, and that he did not see appellee's car. Appellee and his wife testified that they were traveling in the right-hand lane of 43rd Street and that there was no parked car.

The evidence is undisputed that the seat of the driver of the maintainer was higher than the top of an automobile. The driver of the maintainer when sitting on such high seat, had he looked back, could have undoubtedly easily seen over a parked car, if such there was. Moreover, we cannot comprehend any possible connection between a car parked 150 feet back from the intersection, and a collision close to such intersection under the circumstances of this case. In construing the evidence in the light most favorable to appellant, we are of the opinion that there is no evidence raising the issue of unavoidable accident. Our Supreme Court has held that the issue of unavoidable accident should not be submitted when it is not raised by the evidence. In Hicks v. Brown, 1941, 136 Tex. 399, 151 S.W.2d 790, the Court stated that unless there is evidence that something other than the negligence of one of the parties caused the injuries complained of, the issue of unavoidable accident is not raised. See also Collins v. Smith, 1943, 142 Tex. 36, 175 S.W. 2d 407.

In Good v. Born, Tex.Civ.App., 197 S.W. 2d 589, writ ref., n. r. e., the court said:

"It is true that appellant testified as to the presence of a third car in the vicinity of the accident. On the other hand, appellee testified point blank that he did not see or know of the presence of the third car. And neither appellant nor any other witness testified that the presence of this third car interfered with or influenced the conduct of either party or contributed to the accident. No witness testified to any fact which would authorize a finding that the accident could be attributed to the proximity or movement of the third car, so its presence cannot be taken into consideration in passing upon the question of unavoidable accident. In fact and in short, the evidence presented no theory under which the accident could have happened in the absence of negligence of either party and in such case the trial judge was warranted in refusing to submit the issue of unavoidable accident. Dallas Ry. & Terminal Co. v. Darden, Tex.Com.App., 38 S.W.2d 777; Hicks v. Brown, 136 Tex. 399, 151 S.W.2d 790; Collins v. Smith, Tex.Civ.App., 170 S.W.2d 562, 564. In the language of Mr. Justice Murray of this Court, in the case last cited, 'There was no evidence that something other than the negligence of one of the parties caused the collision and therefore the issue of unavoidable accident was not raised.'"

See also Nussbaum v. Anthony, Tex.Civ. App., 214 S.W.2d 686, writ ref., n. r. e.; Coca-Cola Bottling Co. v. Krueger, Tex.

Civ.App., 239 S.W.2d 669; Andrews v. Daniel, Tex.Civ.App., 240 S.W.2d 1018, error dism.; Harrison v. King, Tex.Civ.App., 296 S.W.2d 344, writ ref., n. r. e.

■ Appellant complains that the amounts of $5,000.00 awarded to appellee for future medical expenses and $40,000.00 as general damages are highly excessive and contrary to the great weight and overwhelming preponderance of the evidence. The evidence shows that immediately after the accident appellee complained of headaches and soreness; that he had a restless night with aches and stiffness in his arms and muscles, and pain in his neck; that the next morning he saw Dr. Stanford who gave his neck and back ultrasonic treatments, and who after treating appellee for nearly two weeks referred him to Dr. Elliott, a highly qualified orthopedic surgeon, who took a number of x-rays and a myelogram and discovered that appellee had a ruptured disc between the sixth and seventh cervical vertebrae. An electro-myelogram was also taken which confirmed the condition of appellee's neck. Dr. Elliott referred appellee, who was suffering severe pain and muscle spasms, to Dr. Thomas H. McGuire, a neuro-surgeon, who performed a major operation, a cervical laminectomy on appellee's neck.

Dr. Elliott testified that following surgery appellee was started on various exercises and later traction therapy, and he was given various injections in the shoulder. He also testified as to the medical and hospital bills which amounted to over $2,000.00. He further testified that some year and a half after the accident appellee developed a complication of tendonitis and bursitis, and then became worse and again required traction; that recently he had shown a worsening of his condition and more pain, and the reflexes of his forearm were diminished, and he had developed back soreness and weakness and had more stiffening in his neck and more weakness in his right hand; that three of his fingers in the right hand and his tricepts were weaker and he had

some sensory numbness; that the last time he saw him his right hand was colder than his left hand, indicating new and more involvement of the nerves in his neck; that appellee would continue to experience difficulties and pain in the future; and that the injury to his neck was permanent, and would definitely require medical care which would be at least $250.00 per year indefinitely in the future, excluding surgery; that there was a strong probability that he would require additional surgery and incur in the neighborhood of $800.00 for hospital and a surgeon's fee of $500.00 for another laminectomy and $500.00 for a fusion; and that in all reasonable probability he would suffer pain in his neck permanently.

Dr. McGuire, who was called to the witness stand by appellant, testified that he had examined appellee as late as March 4, 1964, and that he complained of numbness in the thumb, index and middle fingers on his right hand, and weakness in both arms. He testified that appellee's shoulders were somewhat uneven in height, his left shoulder being higher than the right, and that he had weakness in all muscle groups of his left arm, and that the reflexes on the back side of the elbow were not as active as on the front of the elbow; that appellee still had some pain in the extreme rotation of his neck, and that he would have a permanent disability as the result of the accident, and a 25% limitation of motion in his neck. Dr. McGuire thought that appellee's triceptor reflexes were abnormal, and indicative that disability was still present.

It is true that appellee had suffered a neck injury some years before, and that he had some trouble in the lower part of his back. It was shown that the injuries and incapacity for which recovery was sought, however, resulted from a fresh injury to appellee's neck and were attributable to the collision in question.

Appellee was 51 years of age. His mother was living at the age of 91 and his father had died at the age of 92. While mor-

tality tables would indicate that he had a life expectancy of a little over twenty years, the jury might well have concluded that he had a life expectancy greater than the average person due to the longevity of his parents.

We have concluded that the amount awarded for future medical expenses and the amount of general damages found by the jury are supported by the evidence and are not so against the great weight and preponderance of the evidence as to be unjust, and also that neither amount so found is excessive. The award of future medical expenses is a matter about which no precise evidence is required, it being a matter peculiarly for the jury, and one upon which the jury may make its award based upon the nature of the injuries, the medical care rendered before the trial, and the condition of the injured party. Edens-Birch Lumber Co. v. Wood, Tex.Civ.App., 139 S.W.2d 881, Dism., judg. cor., and authorities cited. Appellee had been on medications practically continuously since the collision occurred. The evidence shows that he still suffered from his injury at the time of the trial, and that there was a strong probability that he would require medical care costing $250.00 per year indefinitely in the future, excluding additional surgery.

Although appellee continued to try to work at his job for the Texas Office Supply Company, he was not able to perform his duties satisfactorily. He left his employment and entered into a partnership supplying boiler chemicals, at which employment he made or drew out of the business $3,250.00, about one-half the amount he had previously made per year.

It is difficult to appraise another's pain and suffering. As stated in Port Terminal Railroad Association v. Noland, 1956, Tex.Civ.App., 288 S.W.2d 276, writ ref., n. r. e.:

"There is almost no yardstick which may be employed which will remove the decision from the realm of pure subjective thinking. The only objec-

tive approach to the problem of which this Court is aware is that of comparing the award made with those which have been approved by other courts in comparable litigation."

There is nothing in the record to show bias or prejudice or other improper motive on the part of the jury that would warrant disturbing the verdict in this case. The evidence as hereinabove recited shows that appellee sustained severe injuries, in part permanent, that he suffered pain almost constantly, and that he was incapacitated to do the kind of work which he had previously done. We do not consider the verdict in any way disproportionate to the injuries sustained by appellee, or relatively disproportionate to awards for injuries made in other cases. Missouri-Pacific Railroad Co. v. Ramirez, Tex.Civ.App., 326 S.W.2d 50, writ ref., n. r. e.; Port Terminal Railroad Association v. Noland, supra; Thompson v. Quarles, Tex.Civ.App., 297 S.W.2d 321, writ ref., n. r. e.; Green v. Rudsenske, Tex.Civ.App., 320 S.W.2d 228; Thompson v. Robbins, Tex.Civ.App., 297 S.W.2d 247, aff'd 157 Tex. 463, 304 S.W.2d 111.

Appellant's contention that the trial court erred in permitting appellee to read portions of the deposition of the driver of the maintainer "under the Adverse Witness Rule" is without merit. Mr. Herring, the driver of the maintainer, was placed on the witness stand by appellant after portions of his deposition had been read, and he testified substantially as he had testified in his deposition. Appellant has failed to show any harm. Rule 434. It has been held that agents of municipal corporations are subject to the Adverse Witness Rule. City of Houston v. Glover, Tex.Civ.App., 355 S.W.2d 757, writ ref., n. r. e.; City of Waco v. Criswell, Tex.Civ.App., 141 S.W.2d 1046. Furthermore, appellant objected to the deposition being offered under the Adverse Witness Rule merely on the ground that Herring was no longer connected with the City of Houston and "has not been for some

time". The evidence shows that Herring quit working for the City in September, 1963. There is nothing in the record to show when Herring's deposition was taken, or that he was not in the City's employ at such time.

Judgment affirmed.