### CHICAGO, ROCK ISLAND & TEXAS RAILWAY COMPANY V. J. B. OLDRIDGE.

Decided November 7, 1903.

**1.—Assumed Risk—Defective Appliance—"Appreciating Danger"—Charge.**

In an action by an experienced brakeman who was injured by reason of the defective working of an automatic car coupler, and was familiar with the coupler and its liability to not work properly, and with what was then being done, a charge that plaintiff assumed the risk from the defective condition of the coupler if the same was open to ordinary observation and plaintiff knew and appreciated the danger therefrom, or in the course of his employment must have known and appreciated the same, was misleading and inapplicable under the facts, there being nothing raising the issue that plaintiff did not appreciate the danger, or justifying this limitation of the assumption of risk.

**2.—Same—Contributory Negligence—Charge.**

A charge that the jury should return a verdict for plaintiff if defendant was guilty of negligence as alleged, without, in that paragraph, making the exceptions relative to the defenses of assumed risk and contributory negligence, is not error as excluding those defenses where they are submitted in subsequent paragraphs, though the better practice would be to so construct the charge as to obviate such objection.

**3.—Railroads—Degree of Care—Employe as Mere Licensee—Custom—Charge.**

Where the duties of a freight brakeman did not begin until his train was made up in the yards, and he went into the caboose with his necessary outfit for the trip while the train was being made up, his presence there could not be regarded as that of a volunteer or mere licensee if it was the usual custom for brakemen so to do. See charge as to such custom and its effect that may have been misleading.

Appeal from the District Court of Tarrant. Tried below before Hon. M. E. Smith.

*N. H. Lassiter* and *Robt. Harrison,* for appellant.

*W. P. McLean* and *McLean & Scott,* for appellee.

STEPHENS, ASSOCIATE JUSTICE.—Appellee was severely injured in appellant's switch yards at Fort Worth about June 30, 1902, a little after 10 o'clock at night, on account of which he recovered a verdict and judgment for $14,000, from which this appeal is prosecuted. He was a freight brakeman for appellant, and had been for nearly a year, when he was injured, runnng between Fort Worth and Chickasha. Having been called that night to go out on this run, he went down to the yards about thirty minutes before his train was due to leave, carrying a lantern, and also a valise containing his clothes and lunch. His train was then being made up, and the caboose to be attached to it was still on a switch track and was, as he knew, being handled by the switch crew (to which he did not belong) engaged in making up the train. He at once stepped upon the rear platform of the caboose, unlocked the door and entered, leaving the lantern on the platform and placing the valise on the inside. He then undertook to light the lamp in the caboose, when a sudden jerk threw him head first through the door

he had just opened and over the platform to the ground, where he was run over by the caboose, which severed his right arm and shoulder. The switchmen had undertaken, by reversing the engine and uncoupling the caboose from the rest of the string of cars they were handling, to kick the caboose down the track, but it failed to uncouple, and this caused the jerk which threw appellee out. Appellee was aware of what they were attempting to do. Whether this failure to uncouple was due to a defect in the coupling, or to the negligence of the brakeman in failing to promptly and sufficiently pull up the coupling pin, or to unavoidable accident, was controverted and not conclusively shown by the evidence.

The separation of the caboose from the rest of the train, which immediately followed the jerk, was due either to the rebound inevitable in such cases, or to a tardy but finally successful effort on the part of the brakeman to pull up the pin. The testimony of the brakeman was to the effect that he pulled up the pin promptly and sufficiently, and that automatic couplers would frequently, or at least occasionally, fail to uncouple in the first instance. Appellee admitted that they would sometimes fail, and had done so on his train. The testimony also tended to show that he must have been familiar both with the kind and condition of the couplers on this caboose, as well as with the kind used by appellant generally. The jerk produced by the failure of the cars to uncouple might not and probably would not have thrown appellee overboard if the guard chain at the rear end of the caboose had not been unfastened at one end. The evidence tended to show that it was the duty of appellant's car inspector to see that the guard chains were in proper condition, that is, hooked up, before cabooses were turned over to those making up the trains. Appellee denied seeing that the chain on the caboose from which he was thrown was down when he boarded it, but admitted he could have done so if he had looked. His evidence also tended to show that it was customary and in the line of duty for a freight brakeman, when called to go out on his run, to go, with his lantern and valise, direct to the caboose to be attached to his train while it is yet in the yards and before the train is made up and there wait for the conductor, though it seems clear that such brakeman has no duty to perform connected with the making up of such train, and that, aside from acts of preparation, his work does not really begin till the train is fully made up.

The grounds of liability submitted in the charge were these: Whether there was negligence, first, in suddenly reversing the engine with great or unnecessary violence; second, in failing to have the guard chain fastened across the rear end of the caboose; third, in failing to have the caboose equipped with reasonably safe coupling appliances; fourth, in the manner in which these appliances were handled in this instance by the yard brakeman.

The grounds of defense submitted were assumed risks and contrib-

utory negligence. The issues of assumed risks were thus submitted: "4. When the plaintiff entered the service of the defendant he assumed all the risks ordinarily incident to the work in which he engaged, and such other risks of which he had knowledge, or in the course of his employment he must necessarily have known. (a) Now if you find and believe from the evidence that the movement of the train, if any, which threw plaintiff from the caboose was such as is usual and ordinarily incident to the business in which plaintiff was engaged on the occasion of his alleged injury; (b) or if you believe from the evidence that said coupling appliances were insufficient, unsuitable or defective, and unsafe for the purpose for which used, and you believe that plaintiff knew of such insufficiency or defective and unsafe condition of the appliances, or if the same were open and obvious to ordinary observation and plaintiff knew and appreciated the danger thereof, or in the course of his employment he must necessarily have known of and appreciated the same, then he will be deemed to have assumed the risk of danger arising by reason of such insufficiency or defective condition, if any, in said coupling appliances, and if you so find from the evidence, then you will exclude from your consideration the alleged negligence of defendant based upon alleged insufficiency and defective coupling devices. If you believe from the evidence that the plaintiff knew that the chain, known as the guard chain, was not fastened when he entered the caboose, and knew and appreciated the danger, if any, incident to the same being down, then he will be deemed to have assumed the risk of danger, if any, arising by reason of said guard chain being down and not fastened, and if you so believe from the evidence, then you will look to other issues herein submitted to you in order to determine whether the defendant is liable, and not consider the fact of said guard chain being not fastened, if it be a fact."

Error is assigned to these charges on the ground that "there was no claim that the plaintiff did not appreciate the danger, and there was no evidence raising this issue or justifying such limitation of his assumption of risk;" and we think the position is well taken.

Cases might arise in which it would be proper to give such a charge, as for instance where a servant, by reason of ignorance and inexperience, is not aware of the danger to which a known or obvious defect in intricate machinery or a complex situation exposes him, but no such case is presented by the record before us. Appellee was a brakeman of several years experience, and was not only familiar with the couplers and guard chains used on this caboose, but was aware that the caboose was about to be uncoupled and kicked by the yard men, and must have known as well as appellant or anyone else, or must be held to have known what would be the probable consequences to one standing up as he was in the caboose about to be kicked by reversing the engine, if, by reason of a defective coupler, it should fail to come uncoupled. The charges in the feature complained of, therefore, were inapplicable to

the facts of this case and misleading. Railway v. Peden, 31 Texas Civ. App., —, 74 S. W. Rep., 932, and cases there cited.

The charge defining negligence is criticised, and as it is identical with one considered by this court in Chicago, R. I. & T. Railway Co. v. James, 75 S. W. Rep., 930, we need only refer to the comments and suggestions made in that opinion. ·

. The court charged the jury that it was the duty of appellant to use ordinary care "to equip the said caboose with reasonable, proper and suitable appliances," and it is insisted that the measure of its legal duty was to use ordinary care "to equip its cars with reasonably safe and suitable appliances." The difference between the expressions quoted may not amount to much, but we suggest that it would at least save controversy in this court if the courts of first instance in defining legal principles would employ language which has been approved by the court of final jurisdiction rather than experiment with doubtful expressions.

Further complaint is made of the charge on the ground that the court instructed the jury to return a verdict for appellee, if appellant was guilty of negligence as alleged, without, in that paragraph of the charge, making any exceptions; the contention being that the defenses of assumed risk and contributory negligence, though submitted in subsequent paragraphs, were thus excluded from the consideration of the jury. The answer to this is that the court is not required to give the whole charge in one paragraph, but while this is true, we are yet of opinion that it would be better if the judge, who is required to make a plain statement to the jury of the law arising on the facts, would so construct the charge as to obviate such an objection.

Much prominence is given in appellant's brief to the contention that appellee was not in the discharge of his duty as a freight brakeman when he entered the caboose in the switch yards before his train had been made up, but was a trespasser or mere licensee, and that appellant consequently was not under the duty of taking such care for his safety as it owed its servants. Complaint is made of the verdict and also of the charge on this ground. The testimony of appellee tended to show that it was customary for freight brakemen, when called to go out with a train, to meet the conductor in the caboose, with the food and clothing required for the journey, while the caboose was yet in the yards and before the train had been made up. If it be true that appellant's business, as well as that of other railway companies, had been habitually conducted in this manner, as the evidence tended to show, in the absence of a definite rule or positive requirement to the contrary, we could not say that appellee was a mere volunteer when he entered the caboose in this instance. His conduct should be interpreted in the light of the usage or custom pertaining to the service in which he was engaged; and the question was one for the jury. In submitting it the court instructed the jury to find that appellee was acting as a volunteer and

not as a servant of appellant if at the time he entered the caboose he was not under any obligation under his contract of employment with appellant to do so, "and was not authorized to go into said caboose under the terms of his employment." The charge was one requested by appellant, except the clause quoted, which was inserted over its objection. As the terms of employment seem to have been silent on this subject, it is not clear what use the jury may have made of this clause of the charge. We are inclined to think it was misleading.

For the error first noticed, the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*