SMITH & CONKLIN BROTHERS ET AL V.
HOWARD VERNON GRIFFITH ET AL

No. A-4387. Decided May 5, 1954.
Rehearing overruled June 9, 1954.
(268 S.W. 2d Series 124)

*Dyess, Dyess & Jennings,* of Houston, *Strasburger, Price Holland, Kelton & Miller,* and *Hebert Price,* all of Dallas, for petitioner.

The Court of Civil Appeals erred in holding that petitioners motions for preemptory instructions and for judgment non obstante Veredicto were properly overruled. Texas & Pac. Ry. Co. v. Bigham, 90 Texas 223, 38 S.W. 162; Baughn v. Platt, 123 Texas 486, 72 S.W. 2d 580; Wm. Cameron & Co. v. Thompson, 175 S.W. 2d 307, writ of error dismissed W.O.M.

*Luther F. Hardin,* of Rosenberg, *Smith & Lehman* and *M. A. Lehman,* for Howard Vernon Griffith, *Morris, Underwood & Oldham, and J. Toll Underwood,* for intervenor, Texas Employers' Ins. Assn., all of Houston, for respondents.

After disregarding all conflicts, there being ample evidence to support the jury verdict, the trial court committed no error in refusing to set aside the verdict of the jury. Chapman v. Evans, 186 S.W. 2d 827, error refused W.O.M.; Texas & N.O. R.R. Co. v. Brooks, Com. App., 292 S.W. 536; Clark v. National Life & Acc. Ins. Co., 145 Texas 575, 200 S.W. 2d 820.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

In the trial court respondent Howard Vernon Griffith was awarded damages for personal injuries against petitioner Smith & Conklin Brothers, and the trial court's judgment was affirmed by the Court of Civil Appeals. 260 S.W. 2d 705.

Respondent was an employee of Starworth Drilling Company, and received his injuries as a result of an accident which happened while an oil well drilling rig owned by his employer was being dismantled. Petitioners operate a truck line, and had been employed by Starworth Drilling Company to move the drilling rig from one location to another. They had two employees on the job, a truck driver and his helper, called a swamper. They worked with or assisted the employees of the drilling company in the dismantling process. The particular operation at hand when respondent was injured was to move a Halliburton reel from the derrick floor and load it on petitioners' truck. The evidence discloses that the job required co-operation between the employees of petitioners and the employees of the drilling company. Petitioners' truck winch line, which was operated by their employees, was tied to the bottom part of the legs of a reel which weighed four or five hundred pounds. The reel was resting on the platform of the drilling rig, and a pickup line called a cat line, operated by the employees of the drilling company under the direction of its tool pusher, was tied to the top of the reel. The respondent had no control over either line. Because of a lack of co-operation the Halliburton reel toppled or flipped over as it was lifted by the cat line, and knocked respondent from the derrick floor. The swamper was standing either on the rear bed of the winch truck or on the floor near the reel in a position where he had a full view of both the reel and the truck driver. It was his duty to give signals to the truck driver in order to effect co-operation between the two lines.

We are unable to make a clear statement from the record or the briefs of just how the accident occurred. Each witness who

testified concerning the occurrence did so with reference to a model to illustrate his testimony, which makes his testimony uncertain to one who did not hear it. However, there was testimony that the truck winch line was slack, that when the reel was lifted off the derrick floor by the cat line it swung toward the rotary, that when the slack in the winch line was taken up there was a sudden jerk and the reel swung back toward the edge of the derrick floor, and that the truck winch line was pulling on the reel when respondent was knocked off the floor.

The answers of the jury to special issues reflect its views of why the reel toppled. Those answers were as follows:

"At the time of and immediately prior to the accident in question the truck driver failed to maintain proper control of the truck winch and truck winch line; failed to maintain a proper lookout to see that the Halliburton Reel was snubbed; the swamper failed to determine what the action of the operator of the draw-works would be in the movement of the reel; the truck crew caused the Halliburton Reel to be suddenly jerked; permitted the truck winch line to be slack immediately before the occurrence in question; failed to warn respondent that the truck winch line was slack; failed to halt the movement of the reel at the time of or immediately before the occurrence in question; and finally, that the accident in question was not the result of an unavoidable accident."

We granted the application for a writ of error in this case on the point that the petitioners' motion for judgment non obstante veredicto should have been granted. It was the view of some members of the Court that the whole process was under the direction of the tool pusher of the drilling company, and that the swamper was under his control as to the details of the operation. It develops, however, that petitioners do not claim that the doctrine of loaned servants has been invoked by them, but claim in support of their motion that there is no evidence in the record authorizing the submission of any of the special issues contained in the court's charge. The point is not sustained.

It would be useless labor of us to go through the entire statement of facts and then point out in this opinion the evidence relevant to each ground of recovery and then discuss the question of whether each was a proximate cause of the accident and the injuries. As stated above, it is impossible to get a clear picture of what happened, but there is some evidence, as pointed out in

the brief of respondent Griffith, which has been checked with the record, supporting the answers of the jury that the truck crew caused the Halliburton reel to be suddenly jerked and permitted the winch line to be slack immediately before the accident, and that they failed to warn respondent that the truck winch line was slack. Each of these acts of negligence was found to be a proximate cause of the injuries. We have not examined this record to determine whether there was evidence supporting the answers of the jury to any other special issues, for the reason that the judgment can rest upon any one of the grounds submitted. The fact that the statement of facts is in such condition because of the reference of the witnesses to a model and the use of the words "this" and "that" in describing the accident as to make it difficult to describe how the accident occurred is no ground for the conclusion that there was no evidence of negligence. The court and the jury had the model before them, and the testimony doubtless meant much more to them than it does to us. We cannot say that it meant nothing to them, or that it did not lend support to the answers above mentioned.

We concur in the holding of the Court of Civil Appeals that the trial court committed no error in refusing to submit to the jury the special issues requested by petitioners. The court fairly submitted the controlling issues raised by the pleadings and evidence, and the requested special issues related only to various shades of the issues submitted. Rule 279, Texas Rules of Civil Procedure, is applicable.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered May 5, 1954.

Rehearing overruled June 9, 1954.