Maude SMITH, Surviving Wife and Administratrix of the Estate of R. E. L. Smith, Deceased, Appellant,

v.

FORT WORTH & DENVER CITY RAILWAY COMPANY, Appellee.

No. 15135.

United States Court of Appeals, Fifth Circuit.

Jan. 28, 1955.

Rehearing Denied Feb. 28, 1955.

Jack G. Banner, Philip S. Kouri and Kouri & Banner, Wichita Falls, Tex., for appellant.

H. M. Muse, Wichita Falls, Tex., Seth W. Barwise, Fort Worth, Tex., Stanley C. Kirk, Wichita Falls, Tex., for appellee.

Before BORAH and TUTTLE, Circuit Judges, and DAWKINS, District Judge.

TUTTLE, Circuit Judge.

This case is before us for the second time. It was instituted by appellant who was the administratrix of the estate and the widow of the deceased R. E. L. Smith, under the Federal Employers' Liability Act.[1] Recovery was sought for injury, pain and suffering, loss of wages and for the wrongful death of Smith during the course of his employment as a switchman and engine foreman in one of appellee's railroad switching yards.

The case was submitted to the jury on the first trial on all issues, including the claim for wrongful death. The jury returned a verdict for the plaintiff, appellant here, and the railroad appealed from the judgment entered on the verdict, contending that the District Court should have directed a verdict in its favor for the reason that the plaintiff failed to adduce any evidence of probative force to show that appellant was negligent, and that in whole or in part Smith's injuries and death resulted proximately therefrom.

We held that there was sufficient evidence to go to the jury on the question whether, as alleged in the complaint, appellant was negligent in failing to use reasonable care in furnishing Smith with a safe place to work. However, we held that there was a complete absence of evidence from which the jury might reason-

ably find a chain of causation between Smith's injuries and his death, and the judgment of the trial court was reversed. Fort Worth & Denver City R. Co. v. Smith, 5 Cir., 206 F.2d 667. Upon retrial the evidence was substantially identical with that previously introduced, with the exception of the evidence of an additional doctor who undertook to connect the injury with the death of plaintiff's decedent.[2]

The plaintiff below, on the second trial, also tendered in evidence hospital records of the Wichita Falls Clinic-Hospital relating to the decedent's stay in that hospital immediately following the injury. This evidence was rejected by the trial court.

At the close of the entire case the trial court directed a verdict for the defendant and the plaintiff now appeals. The grounds of appeal are the alleged error of the trial court in refusing to allow plaintiff to introduce pertinent parts of the medical records of the hospital, and granting defendant's motion for an instructed verdict instead of submitting to the jury for its determination the question of actionable negligence resulting in the injury to decedent and also resulting in decedent's death.

█ As we stated on the earlier appearance of this case here, there was in our view sufficient evidence to go to the jury on the question whether appellee railroad was negligent in failing to use reasonable care in furnishing Smith with a safe place to work.

While we did not expressly so find previously, we do now find that there was sufficient evidence to go to the jury on the question as to whether decedent's fall was occasioned by the condition of the yard and tracks in which the jury could find he was engaged in the furtherance of interstate commerce on behalf of the defendant. Tennant v. Peoria & Pekin Union Railway Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520. As to the contention of appellee that appellant failed to prove that the deceased was engaged in interstate commerce, it is sufficient to point out that appellee's counsel proved on cross-examination of certain of appellant's witnesses that the main line to Denver was included in the tracks over which deceased was walking and with respect to which the jury might find his switching operations were performed.

With respect to the contention of the appellant that the record as now presented supplies the missing link in what she contends to be a sufficient chain of causation of her husband's death, it is necessary to consider the testimony of Dr. Pollard.[3] While appellee's counsel

---

2. The other facts on the issue of negligence, the degree of injury and the cause of death are all detailed in our earlier opinion and will not be repeated here.

3. In response to a hypothetical question, the following took place:

"Q. Do you have an opinion? A. Yes, sir, I have.

"Q. * * * A. Well, I think from my casual examination of him, which was not extensive, I think he had, to start with, a ruptured liver, and I believe—

"Mr. Muse: We object to that answer as not responsive to the question propounded. He is now giving some testimony of a casual examination.

"Q. Yes, sir, just answer the questions propounded. A. Well, I think that the injuries he received had a lot to do with his death, I sure do.

"Q. What is the basis of that opinion? A. Because his vitality was lowered, he

could hardly get around, he never felt well after the accident.

"Q. Would injuries like those we have recited aggravate and disturb his internal organs. A. Certainly they would.

"Q. Including his liver? A. Yes, sir.

"Q. And would the rundown condition contribute toward the trouble with his liver? A. Yes, sir, it would lower his vitality.

"Q. Would it contribute toward his death? A. Yes, sir.

"Q. Would it contribute toward his heart trouble? A. You lower a man's vitality and you can attribute anything to it.

"The Court: We are talking about this particular man. A. This man's vitality.

"Q. Were the injuries which we have described, which Mr. Smith had, are those serious injuries? A. Yes, sir.

made some objection to the form of the hypothetical question, the Court permitted it to stand, and counsel, on cross-examination, proceeded on the assumption that the testimony of Dr. Pollard as shown in the margin stands, and we must consider it, with all proper inferences and deductions therefrom, in the light most favorable to appellant.

In view of the testimony given on behalf of appellant to the effect that an injury of the type it is contended the decedent suffered probably contributed to the condition resulting in death, the record now before us differs substantially from that dealt with in our previous opinion. The trial judge erred in not submitting the case to the jury, not only on the question of loss of earnings, pain and suffering and injury during life, but also on the question of the cause of death.

Inasmuch as the case will be tried again, we should also pass on the issue raised by appellant's exception to the trial court's refusal to permit appellant's counsel to introduce in evidence the hospital records. The applicable statute is found in 28 U.S.C.A. § 1732.[4] In accordance with the expressed terms of this statute, the hospital records were admissible, if they were tendered for the purpose of proving some "act, transaction, occurrence, or event." A proper foundation was made for their admission, for they were produced as the "records" of the hospital relating to this patient, and the witness testified that they were prepared and kept in the ordinary course of the business of the hospital.

While the records should have been admitted if they contained evidence of relevant acts, transactions, occurrences or events, as we have stated, there is nothing before us in the record from which we can determine whether they were relevant since the plaintiff did not perfect the record so as to present the substance of the documents for our consideration, as provided for under Rule 43(c) Fed.Rules Civ.Proc. 28 U.S.C.A. This Court is not permitted to speculate, as we are asked to do by appellant in her brief, that these records, if admitted, would prove pain and suffering and the nature of the injury. We include this discussion of the tender of the evidence and the Court's action thereon only as guidance in the future determination of this case by the Court below.

The Court having erred in withholding the case from the jury, this judgment must therefore be reversed and the case remanded for a new trial.

Reversed and remanded.

"Q. Could they in themselves cause the death of Mr. Smith? A. Yes, sir, they could.
"Q. In all reasonable probability did they contribute to his death? A. I don't think there is any doubt whatever about it.
"Mr. Glazner: That is all."

4. "§ 1732. Record made in regular course of business
"In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.
"All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility.
"The term 'business,' as used in this section, includes business, profession, occupation, and calling of every kind. June 25, 1948, c. 646, 62 Stat. 945."