**OWEN DEVELOPMENT COMPANY, Appellant,**

v.

**Roy CALVERT & F. A. Cotey, Appellees.**

**No. 6889.**

Court of Civil Appeals of Texas.

Texarkana.

June 21, 1956.

Rehearing Denied July 19, 1956.

Murph Wilson, Spruiel, Lowry, Potter & Lasater, Tyler, for appellant.

Johnson & Hathaway, Tyler, for appellees.

DAVIS, Justice.

Appellees-plaintiffs, Roy Calvert and F. A. Cotey, sued appellant-defendant, Owen Development Company, a corporation, for damages as the result of a fire which occurred August 24, 1954, which destroyed or damaged a building belonging to appellant and leased by appellant to appellees, in which building appellees had two trucks, large quantities of oil and other equipment necessary to the carrying on of appellees' business in greasing and otherwise servicing oil well pumps and oil producing equipment. Appellees alleged that their property and equipment situated in the building at the time of the fire was destroyed or damaged by said fire and listed each item of property in the building at the time; the total alleged value of all of said property immediately before said fire was $12,879.22. The total value of all remaining property not completely destroyed being alleged to be $2,401; thus making a total of damages alleged to the property damaged and/or destroyed to be $10,478.22. Appellees also alleged damages in the sum of $3,100 for the loss of the use of their trucks for a period of 31 days following the fire and that they were compelled to expend the sum of $760 "for the purpose of cleaning up the debris, cleaning and restoring the plaintiffs' salvaged property to a usable condition."

Appellant is engaged in the real estate business and had acquired a part of the old Camp Fannin Army site near Tyler, Texas, for the purpose of developing said property into a rural community for its

profit. Appellees had leased one of the old Army buildings for a place from which to carry on their business.

On August 24, 1954, appellant had its own fire department with a paid Fire Chief, a man by the name of E. R. Grant. The weather was extremely dry and the grass covered a large part if not all of the unoccupied areas (amounting to some 500 or 600 acres on such date), and covered around the building occupied by appellees, in such quantities as to create a fire hazard. On said date the Fire Chief of appellant's fire system, assisted by four volunteer employees of other tenants, upon instructions from an authorized agent of appellant, was engaged in burning the grass from such property. The grass was burned from the area adjacent to the building leased to appellees in the forenoon. The Fire Chief, E. R. Grant, and his assistants stopped such burning operations around 10:00 a. m. on said date because the wind had commenced to blow. They extinguished the fire, except for some smoldering chunks of wood or refuse that was scattered over the burned area and probably some smoldering embers in the edge of the weeds and grass of the burned area which extended to within 30 to 50 feet of the building occupied by appellees. One inspection of the burned area around said building was made by said Fire Chief about noon of said date and no blazing fire was noted in the remaining grass around said building at that time, but the chunks of wood or other refuse were still smoking at such time. Around 2:30 or 3:00 o'clock that afternoon, a man was passing along the highway which runs near such property and noted the building that was occupied by appellees to be on fire near the ground. He reported the fire but it had gained such headway before the fire fighting equipment could reach the building from another area where they were then engaged in burning grass that the entire building was almost completely destroyed and large quantities of personal property belonging to appel-

lees were completely destroyed and the remaining property of appellees in said building at such time was damaged.

Appellees alleged that smoldering embers or sparks from the burning chunks of wood or refuse had set the remaining grass around the building on fire and that such fire spread to and ignited said building and resulted in the damages alleged by appellees.

Appellees alleged a number of acts of negligence, among which were failure to properly put out the fire and the failure of appellant or its agent, servants or employees to notify appellees or their employees that such grass was to be burned.

The evidence shows that after the fire was discovered all the grass around said building had burned. Appellant contended that the building had caught on fire from some other cause and that the fire from the building had set the grass, but there is no evidence in the record that any part of the grass was burning at the time of or after the fire was discovered.

Upon the answers of the jury to 18 special issues, judgment was entered for appellees. An appeal was duly perfected to this Court and appellant brings forward seven points of error, each of which is challenged by appellees. In view of the fact that three of the appellant's points of error complain of eight of the special issues in the court's charge as being comments on the evidence, we copy all the special issues, with the jury's answers thereto, as follows:

"Special Issue No. 1:

"Do you find from a preponderance of the evidence that the failure of the defendant, Owen Development Company, to notify Roy Calvert and F. A. Cotey or their employees that the grass fire was to be set was negligence?

"Answer 'Yes' or 'No.'

"Answer: Yes.

"Special Issue No. 2:

"Do you find from a preponderance of the evidence that the failure of Owen Development Company to notify the plaintiffs or their employees that the fire was to be set was a proximate cause of the fire to the plaintiffs' property?

"Answer 'Yes' or 'No.'

"Answer: Yes.

"Special Issue No. 3:

"Do you find from a preponderance of the evidence that the burning of the grass by E. R. Grant and the parties with him when neither the plaintiffs or their employees was present was negligence?

"Answer 'Yes' or 'No.'

"Answer: Yes.

"Special Issue No. 4:

"Do you find from a preponderance of the evidence that the burning of the grass by E. R. Grant and the parties with him at a time when neither of the plaintiffs or their employees were present was a proximate cause of the fire to the plaintiffs' property?

"Answer 'Yes' or 'No.'

"Answer: Yes.

"Special Issue No. 5:

"Do you find from a preponderance of the evidence that the failure of E. R. Grant to make or to have made more than one inspection of the area around the plaintiffs' building after Grant and the other parties had finished their grass burning in that area, if you have so found, was negligence?

"Answer 'Yes' or 'No.'

"Answer: Yes.

"Special Issue No. 6:

"Do you find from a preponderance of the evidence that the failure of E. R. Grant to make or to have made more than one inspection of the area around the plaintiffs' building after Grant and the other parties had finished their grass burning in that area, if you have so found, was a proximate cause of the fire to the plaintiffs' property and their damages, if any?

"Answer 'Yes' or 'No.'

"Answer: Yes.

"Special Issue No. 7:

"Do you find from a preponderance of the evidence that E. R. Grant and the other parties working with him on the morning in question failed to extinguish the fire they had set around the plaintiff's property?

"Answer 'Yes' or 'No.'

"Answer: Yes.

"Special Issue No. 8:

"Do you find from a preponderance of the evidence that the failure of E. R. Grant and the other parties working with him to extinguish the fire they had set on the morning in question, if you have so found, was negligence?

"Answer 'Yes' or 'No.'

"Answer: Yes.

"Special Issue No. 9:

"Do you find from a preponderance of the evidence that the failure of E. R. Grant and the other parties working with him to extinguish the fire they had set on the morning in question, if you have so found, was a proximate cause of the fire to the plaintiffs' property?

"Answer 'Yes' or 'No.'

"Answer: Yes.

"Special Issue No. 10:

"Do you find from a preponderance of the evidence that E. R. Grant at the time and place in question on August 24, 1954, in setting the grass on fire was an employee of Owen Development Company?

"Answer 'Yes' or 'No.'

"Answer: Yes.

"If you have answered the foregoing Special Issue No. 10 'Yes', and in that event only, then answer the following special issue.

"Special Issue No. 11:

"Do you find from a preponderance of the evidence that E. R. Grant at the time and place in question on August 24, 1954, inquired about in Special Issue No. 10, was acting in the scope of his employment with the Owen Development Company?

"Answer 'Yes' or 'No.'

"Answer: Yes.

"Special Issue No. 12:

"Do you find from a preponderance of the evidence that a Volunteer Fire Department existed in Owentown at the time of the fire on August 24, 1954?

"Answer 'Yes' or 'No.'

"Answer: No.

"In connection with the foregoing issue, you are instructed that the term Volunteer Fire Department means a voluntary association of individuals and/or corporations in a community for the purpose of protecting their lives and property from fire damage in which the members of the association contributes their services or funds in furtherance of such purpose.

"Special Issue No. 13:

"Do you find from a preponderance of the evidence that E. R. Grant, H. R. Jones, Harold Kelly, Jones Parker and Grady Warren were working as members of the Volunteer Fire Department of Owentown, if you have found that such a volunteer fire department existed, in burning grass on the morning of August 24, 1954?

"Answer 'Yes' or 'No.'

"Answer: No.

"Special Issue No. 14:

"Do you find from a preponderance of the evidence that E. R. Grant, H. R. Jones, Harold Kelly, Jones Parker and Grady Warren, used reasonable care to put out the grass fire around plaintiffs' building?

"Answer 'Yes' or 'No.'

"Answer: No.

"In connection with the foregoing issue, you are instructed that reasonable care means the degree of care that would be exercised by a person of ordinary prudence and care under the same or similar circumstances.

"Special Issue No. 15:

"Do you find from a preponderance of the evidence that the grass fire did not spread to or ignite plaintiffs' building?

"Answer 'The grass fire did not spread to or ignite plaintiffs' building' or 'The grass fire did spread to or ignite plaintiffs' building.'

"Answer: The grass fire did spread or ignite plaintiff Bldg.

"Special Issue No. 16:

"Do you find from a preponderance of the evidence that the fire which burned the building occupied by plaintiffs was not the result of an unavoidable accident?

"Answer 'It was not the result of an unavoidable accident' or 'It was the result of an unavoidable accident.'

"Answer: It was not result of an unavoidable accident.

"Special Issue No. 17:

"What do you find from a preponderance of the evidence was the reasonable cash market value (as that term is herein defined) of the property that was destroyed by the fire at the time and on the occasion here in question as alleged in Paragraph 6 of Plaintiffs' First Amended Original Petition immediately prior to said fire on August 24, 1954?

"Answer in dollars and cents, if any.

"Answer: $10,000.

"Special Issue No. 18:

"What do you find from a preponderance of the evidence was the reasonable cash market value (as that term is herein defined) of the property that was destroyed by the fire at the time and on the occasion in question as alleged in Paragraph 6 of Plaintiffs' first Amended Original Petition immediately after the said fire on August 24, 1954?

"Answer in dollars and cents, if any.

"Answer: $2,400.

"By the term Reasonable Cash Market Value, as used in this charge, is meant the price property will bring when offered for sale by one who desires to sell but is not obligated to sell and is bought by one who desires to buy but is under no necessity of buying.

"Special Issue No. 19:

"Do you find from a preponderance of the evidence in this case that the damages to Plaintiffs property which occurred on August 24, 1954, proximately caused a loss of any net profits to them for a period of thirty-one (31) work days immediately following the fire?

"Answer 'Yes' or 'No.'

"Answer: Yes.

"Special Issue No. 20:

"What sum of money, if any, do you find from a preponderance of the evidence in this case have plaintiffs lost by reason of the loss of net profits from their business during a period of thirty-one (31) work days immediately following the fire resulting from the fire of August 24, 1954?

"Answer in dollars and cents, if any.

"Answer: $1,275.

"Special Issue No. 21:

"What amount of money, if any, if paid now in cash do you find from a preponderance of the evidence will reasonably and fairly compensate plaintiffs for cleaning up and restoring plaintiffs salvaged property in usable condition?

"Answer in dollars and cents, if any.

"Answer: $760."

By Points 3, 4 and 5, appellant complains of the action of the trial court in overruling its objections to Special Issues Nos. 2, 4, 6, 9, 17, 18, 19 and 20, contending that such issues assume certain facts and each assumed fact was a comment on the evidence. It contends in Point 3 that Special Issues Nos. 2, 4, 6 and 9 "(concerning whether certain acts of alleged negligence were the proximate cause of the injury)" were comments on the evidence, "because they assume that the grass fire spread to and ignited the building." By Point 4, it contends that Special Issues Nos. 17 and 18 assume that appellees' property was damaged or destroyed by fire at the time and on the occasion in question. And by Point 5, it contends that Special

Issues Nos. 19 and 20 suggest "a period of 31 days in which plaintiffs lost profits, thereby giving undue prominence to this arbitrary time and to the testimony of plaintiff F. A. Cotey." Appellant relies most heavily upon the cases of Johnson v. Zurich General Accident & Liability Ins. Co., 146 Tex. 232, 205 S.W.2d 353; Ft. Worth & Denver Ry. Co. v. Barlow, Tex.Civ.App., 263 S.W.2d 278, writ ref., N.R.E.; Sinclair Navigation Co. v. Kremlick, Tex.Civ.App., 129 S.W.2d 758, no writ history; Gordon v. McIntosh, Tex.Civ. App., 54 S.W.2d 177, no writ history; Tucker Oil Co. v. Matthews, Tex.Civ.App., 119 S.W.2d 606, no writ history.

■ On Point 3, we think this case at bar can readily be distinguished from those cases, especially those handed down subsequent to the effective date of our Texas Rules of Civil Procedure. Neither do we think that an inquiry as to whether or not certain acts by appellant and its employee "constitute a proximate cause" of the fire and damages constitute a comment upon the evidence. We also point out that the court inquired by Special Issue No. 15 as to whether or not the grass fire did spread to or ignite the building occupied by appellees, which was answered in the affirmative. It would have probably been better form to have submitted that issue first. We point out further that the grass fire is admitted by appellant, as well as admitting that the building burned, and they do not question the destruction or damage of appellees' property. We think our conclusions apply to each of Special Issues Nos. 2, 4, 6, and 9, because they inquire as to whether or not certain acts and conduct on the part of appellant's fire chief was a "proximate cause" of the fire and damages to appellees' property.

■ On Point 4, we think the challenge to Special Issues Nos. 17 and 18 as being comments on the evidence are without merit. Appellant contends that the issues as submitted assume that the fire spread to and ignited the building occupied by appellees. As above stated, appellant admits that a fire destroyed said building at the time and on the occasion in question. Whether it was caused by the grass fire, or any other cause, an inquiry as to the value of appellees' property immediately before and immediately after the fire definitely does not assume that the grass fire ignited said building.

■ On Point 5, we think the challenge to Special Issues Nos. 19 and 20 which inquires as to whether or not the damages to appellees' property causes a loss of any net profits to them for a period of 31 workdays immediately following the fire; and if so, the value of the loss of such net profits is without merit. Appellant also contends that such special issues give undue prominence to a 31 workday period and is a comment upon the evidence. A careful examination of the pleadings and the evidence shows that appellees alleged that they sustained a loss of net profits for a 31 workday period. The evidence, without objection, shows a loss of profits for a 31 workday period. We think these issues comply with the pleadings and the evidence, which pleadings were not excepted to by appellant, and neither of them contains any comment upon the evidence.

If we are mistaken, appellees have countered with the proposition that if either of such was error, that same does not constitute a reversible error. Rules 434 and 503, V.A.T.R.C.P., and many late cases, we think, support their theory. See Dallas Ry. & Terminal Co. v. Bailey, 151 Tex. 359, 250 S.W.2d 379; Cole v. Waite, 151 Tex. 175, 246 S.W.2d 849; Texas Employer's Ins. Ass'n v. McKay, 146 Tex. 569, 210 S.W.2d 147; Pickens v. Harrison, 151 Tex. 562, 252 S.W.2d 575; City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W. 2d 808; Mason v. Yellow Cab & Baggage Co., 153 Tex. 344, 269 S.W.2d 329; Walker v. Texas Emp. Ins. Ass'n, Tex., 291 S. W.2d 298, 301; V.A.T.R.C.P. 434 and 503, and authorities collated thereunder; and 31 Texas Law Review 1.

As pointed out in Walker **v.** Texas Employers Ins. Ass'n, supra, a determination whether the error "'probably did cause, the rendition of an improper judgment' by influencing the jury to return a verdict it probably would not otherwise have returned is to be made from an examination of the record as a whole, * * *." As pointed out above, the record in this case reflects that, without doubt, appellees' property was destroyed and/or damaged by a fire and the evidence is sufficient to support the jury's finding that the grass fire spread to or ignited the building and destroyed and/or damaged said property. Therefore, we have concluded that the errors complained of are not such as would be calculated to cause an intelligent jury to be misled by the forms of the issues complained of or to be influenced thereby to have returned an improper verdict. Points 3, 4 and 5 are overruled.

By Point 2 appellant complains of the action of the trial court in overruling their objections to Special Issue No. 21, because the awarding of damages for the cost of cleaning up and restoring appellees' property to a usable condition constituted an award of double damages. Appellees pleaded the amount of damages inquired about in this special issue as expenditures "for the purpose of cleaning up the debris, cleaning and restoring the plaintiffs' salvaged property to a usable condition * * *." The evidence on this issue can be briefly summarized by the testimony of the only witness on this issue by the following question and answer:

"Q. You have not listed any salvaged property here before, have you, sir?

"A. That is correct. We did salvage some oil, if you recall."

The other testimony shows that the oil salvaged had a remaining value and the record does not show any expenditures in connection with the salvaging of such oil. It boils down to this point: There is no evidence to support the submission of such issue as submitted. The issue as submitted, if supported by any evidence, would constitute a double recovery. Under the testimony, if the court had inquired as to the expenditures for cleaning up the debris from the premises only, (which expenditures probably inured to the benefit of appellant) we doubt that the award of such sum of money in response to such an issue would have constituted a double recovery. We hold that the award of damages in response to the issue as submitted constitutes a double recovery, and the point is sustained.

By Point 6, appellant complains of the action of the trial court in overruling its "* * * objections to Special Issues Nos. 17 and 18 (concerning the value of the property before and after the injury) because they failed to identify what property is referred to except by reference to Paragraph Six of the Plaintiffs' petition * * * contrary to R.C.P. 281 which does not permit the jury to use the pleadings in their deliberations, and is an improper reference." This point, too, is challenged by appellees on the theory that, if error, it does not constitute reversible error.

The evidence shows that immediately after the fire appellees prepared an inventory of the property alleged to have been destroyed and/or damaged by said fire. The evidence further shows that witness F. A. Cotey used this inventory to refresh his memory in testifying in the case. In its argument on this point, appellant makes the following admission:

"He made an inventory of the property destroyed or damaged by the fire. He used this inventory to refresh his recollection but it was not offered in evidence. He then proceeded to testify to the value before and after the fire of each item on his inventory. It must have been similar to the list in Paragraph 6 of Plaintiffs' petition, because the testimony corresponds exactly."

We think the inventory would have been admissible in evidence and the jury would have been entitled to carry such inventory to the jury room with them and use it in their deliberations. There is not the slightest indication that appellees' first amended petition was carried to the jury room or that paragraph 6 of said petition was detached and used by the jury in their deliberations. If the jury had had the inventory and carried it with them to the jury room, it would have revealed the total value of the property immediately before the fire to have been $12,879.22; the value immediately after the fire to have been $2,401; and, the actual damages to such property to have been $10,478.22. Under such state of the record, we are unable to say that the jury was influenced by the allegations in the petition. They found the value of the property immediately before the fire to be $10,000; and the value immediately after the fire to be $2,400; resulting in damages to the property in the sum of $7,600. Therefore, it appears to us that the benefit, if any, resulting in the form of the submission of the charge inured to the benefit of appellant. We are unable to find anything in the record to raise the slightest suspicion that the form of the charge probably did influence the jury in returning an improper verdict, or probably did cause the rendition of an improper judgment. See authorities cited supra. The point is overruled.

We have carefully examined the appellant's points 1 and 7 and find them to be without merit, and they are respectfully overruled.

The appellees, in a reply brief, have suggested a remittitur in the event we should find any item to constitute a double recovery. Therefore, the judgment of the trial court is affirmed in part and reversed in part, with the suggestion that if appellees file a remittitur of the $760 awarded by the trial court in response to the answer of the jury to Special Issue No. 21, the judgment of the trial court will be affirmed, less that sum.

In calculating the answers of the jury to the special issues, the total amount of damages awarded by the jury amounts to $9,635 (an error of calculation in the preparation and entry of said judgment), and judgment was entered for appellees for the total sum of $9,600. The error of calculation will be corrected and the judgment of the trial court will be reformed to conform to the jury findings, and the judgment as reformed will be affirmed in the sum of $8,875, subject to the remittitur herein suggested.

One-half of the costs of this appeal in the court below and in this Court is adjudged against the appellant and one-half is adjudged against the appellees.

The judgment of the trial court is reformed and affirmed in part, and if the remittitur herein suggested is filed within 15 days from date of this opinion, the judgment of the trial court will be reformed and affirmed. If remittitur is not filed, the case will be reversed and remanded.

July 5, 1956: A remittitur of $760 by appellees having heretofore been suggested on June 21, 1956, and the same having been filed within the time allowed, the judgment of the trial court is reformed and affirmed.