Guy A. THOMPSON, Trustee for International-Great Northern Railroad Company, Appellant,

v.

Walter ROBBINS, Appellee.

No. 6915.

Court of Civil Appeals of Texas.

Texarkana.

Dec. 6, 1956.

Rehearing Denied Dec. 27, 1956.

R. B. Reeves, Joe N. Davis, Palestine, Hutcheson, Taliaferro & Hutcheson, McGregor & Sewell, Ben G. Sewell, Houston, for appellant.

Luther C. Johnston, Palestine, Helm, Jones, McDermott & Pletcher, George P. Pletcher, Shirley M. Helm, Albert P. Jones, Houston, for appellee.

DAVIS, Justice.

This is a suit by plaintiff-appellee, an employee, against defendant-appellant, a railroad corporation, under the Federal Employers' Liability Act for damages allegedly received by said employee while in the course of his employment for said railroad corporation. Appellee alleged: His regular employment for appellant was that of a freight conductor but that he was serving at the time and on the occasion in question as a brakeman on a freight train. That he received a call to duty from appellant on May 23, 1954, to report for duty at 1:15 p. m., where a freight train was being made up in Palestine, Texas (this being the home of appellee and the place of the alleged injuries), to make a run to Taylor, Texas. That he reported to the yard about 12:30 p. m. for the purpose of doing all incidental chores preparatory to making the trip, which was an established custom among the employees of appellant at the yards in Palestine, which preparatory work was incidental and necessary to good railroading and the furtherance of appellant's business. That going to work ahead of time was a custom known to appellant. Appellee found the caboose of the train and entered the same shortly before 12:55 p. m. on said date for the purpose above stated. That shortly after he entered the caboose a cut of cars was kicked or shoved into the cars to which the caboose was attached with unusual force and violence and knocking plaintiff a distance of some 20 feet, causing severe and permanent injuries, especially to his back. That he was carried to a hospital in Palestine by ambulance in an unconscious or semi-conscious state, and that afternoon he vomited large quantities of blood on three different occasions. He was kept in the hospital, flat on his back on a hard mattress for six weeks, and was then permitted to sit up on the side of his bed and begin to try to walk about. He was discharged from the hospital on October 6, 1954. He was a man 56 years of age at the time of the accident, had been employed by appellant for approximately 25 years, was earning and capable of earning $6,000 per year. As a result of said injuries he was totally and permanently disabled to work, and that he had a life expectancy of 17.10 years.

Appellee alleged that appellant was guilty of negligence in one or more of the following particulars:

"1. In permitting the cars which were being switched to strike the string of cars to which the caboose was attached with unusual force and violence.

"2. In permitting the cut of cars which were being switched to strike the cars to which the caboose was attached at a rate of speed which was excessive under the circumstances.

"3. In permitting the cut of cars which were being switched to roll down Track 3 at a rate of speed in excess of that at which a person of ordinary prudence in the exercise of ordinary care would have permitted them to move under the same or similar circumstances.

"4. In permitting the cut of cars to roll down grade without having a switchman thereon to control the speed thereof.

"5. In permitting the cut of cars to roll free on a down grade.

"6. In permitting the cut of cars to roll free of the locomotive.

"7. In failing to have the cut of cars which were being switched attached to a locomotive in order that the speed of such cut of cars might be controlled.

"8. In failing to give proper warning to your plaintiff.

"9. In failing to maintain a proper lookout for your plaintiff.

"Each and all of the above and foregoing were acts, both of omission and commission, were negligent and constituted negligence, and were each and all a proximate cause of the occurrence out of which this suit arises and of the injuries .and damages suffered by your plaintiff."

Appellant answered by general denial and that appellee was negligent in one or more of the following respects:

"1. In failing to give notice to the switching crew of his intention to enter the caboose when he did or of his presence in the caboose.

"2. In assuming before entering the caboose that the train had been made up and that switching operations had been completed.

"3. In failing to make any inquiry or investigation to find out if the train had been made up and switching operations completed.

"4. In failing to keep a proper lookout for cars being switched in making up the train in question.

"5. In failing to keep a proper lookout for his own safety.

"6. In failing to exercise ordinary care for his own safety.

"7. In failing to properly brace himself in the caboose.

"8. In ignoring and violating a rule of his employment, with which he was familiar, to the effect that:

" 'Constant presence of mind to insure safety to themselves and others is the primary duty of all employees and they must exercise care to avoid injury to themselves or others * * * when employees are on or near tracks, they must expect the movement of trains, engines, or cars at any time, on any track, in either direction.'

"9. In entering the caboose at the time he did without first making some inquiry or investigation to find out if switching operations had been completed.

"The foregoing acts and omissions constituted negligence. Each such act and omission was a proximtae cause of the plaintiff's injuries, and alternatively one or more of such acts and omissions, separately or in combination or in concurrence with one or more of such acts and omissions, constituted the sole proximate cause of the plaintiff's injuries."

Trial was to a jury which found that:

1. Appellee was performing his duties in the course of his employment for appellant at the time of his injuries;

2. Appellee sustained bodily injuries as a direct, proximate result of the occurrences in question;

3. There was a custom on the part of conductor and trainmen of the road crew to enter the caboose in the Palestine yards of appellant before the train of which the caboose would be a part was completely made up;

4. Appellant knew of such custom;

5. The switching crew should have reasonably anticipated that a member of the train crew would be in the caboose at the time and on the occasion in question;

6. The standing cars attached to the caboose were struck with unusual force and violence by a moving cut of cars;

6a. Such act was negligence;

7. Such act was a proximate cause of the occurrence in question;

8. On the occasion in question the cut of cars that was being switched was permitted to strike the cars attached to the caboose at a rate of speed in excess of that at which a person of ordinary prudence in the exercise of ordinary care would have permitted them to strike under the same or similar circumstances;

9. Such act was a proximate cause of the occurrence in question;

10. The lead car on the rolling cut of cars was equipped with a hand brake adequate to control the speed of such cut of cars;

11. The failure of appellant to place a switchman on the lead car of the rolling cut of cars was negligence;

12. Such negligence was the proximate cause of the occurrence in question;

13. The cut of cars which were being moved was kicked by the locomotive;

14. Such act was negligence;

15. Such negligence was a proximate cause of the occurrence in question;

16. The occurrence in question was not the result of an unavoidable accident;

17. The failure of appellee to give notice to any member of the switching crew of his intention to enter the caboose was not negligence;

19. Appellee was not negligent in assuming before entering the caboose that the train had been made up and switching operations had been completed;

21. The failure of appellee to make inquiry or investigation to find out if the train had been made up and switching operations completed before entering the caboose was not negligence;

23. Appellee did not fail to keep a proper look for cars being switched in making up the train;

25. Appellee did not fail to properly brace himself in the caboose;

28. Appellee did not fail to exercise ordinary care for his own safety;

30. Appellee did not violate defendant's rule reading: "Constant presence of mind to insure safety to themselves and others * * *"

33. Appellee's entering the caboose without first giving notice to the switching crew was not negligence;

35. The act of appellee in entering the caboose without first making inquiry or investigation to find out if switching operations had been completed was not negligence;

37. Damages were assessed at $75,000.

Special Issue No. 38 which inquired as to the amount, if any, should be deducted from appellee's damages because of his negligence was unanswered. In view of the fact that the jury had exonerated appellee from each and every alleged act of negligence, an answer was unnecessary.

Appellant filed motions for instructed verdict and for judgment non obstante verdicto. These were overruled and judgment was entered in behalf of the appellee for $75,000. Appellant's motion for new trial was overruled, and it has perfected this appeal. It brings forward 13 points of error.

■ By Point 1, appellant complains of the action of the trial court in entering judgment for appellee and contends that the undisputed evidence shows that there was no breach of duty owed to appellee by appellant, and as a matter of law, no evidence of actionable negligence. We find the evidence to be very much disputed, and the overwhelming preponderance of such to the contrary. Appellant had a fixed set of rules to govern the actions of its employees, part of which were pleaded as a defense to the cause of action, but Rule 103–A2 prohibits the coupling of cars when making up a train at a rate of speed in excess of four miles per hour. The

evidence in this case goes so far as to show, beyond any doubt, that this rule was violated. Each employee of the railroad that testified (and there were five of them) testified that if the coupling had been made at a rate of speed not in excess of four miles per hour, appellee would not have sustained any injuries at all. The evidence fully supports the jury's finding of the custom of employees going to work ahead of time, and that appellant knew of the custom. There was only 15 minutes from the time the employees' pay started until train departure time, and according to the evidence, it would have been impossible for appellee to have waited until his pay started before entering the yard to do all the things required of him before time for the train to leave. Whether his pay had started or not, he was engaged in the furtherance of his master's business, doing a job that was essential to good railroading, and in keeping with a well established custom. Therefore, appellant owed to him the duty of providing for his safety and appellee did not assume any risk resulting from the negligent operation by appellant's switching crew in making a coupling of the cars at a rate of speed in excess of four miles per hour. We pause here to note that the testimony indicates that the coupling on the occasion in question was made at, or in excess of, a speed of ten miles per hour. The jury finding on this issue being supported by the evidence, appellant is liable. St. Louis Southwestern R. of Texas v. McDowell, Tex.Civ.App., 73 S. W. 974, error ref.; Texas & P. Ry. Co. v. Mix, Tex.Civ.App., 193 S.W.2d 542, no writ history; Chicago, R. I. & Tex. R. Co. v. Oldridge, 33 Tex.Civ.App. 436, 76 S.W. 581, no writ history; Houston Belt & Terminal R. Co. v. Stephens, 109 Tex. 185, 203 S.W. 41; Missouri K. & T. Ry. Co. of Tex. v. Thomas, 48 Tex.Civ.App. 646, 107 S.W. 868, error ref.; Dooley v. Missouri K. & T. R. Co. of Tex., 50 Tex.Civ.App. 298, 110 S.W. 135, no writ history; J. Rosenbaum Grain Co. v. Mitchell, Tex.Civ. App., 142 S.W. 121, error ref.; Missouri K. & T. R. of Tex. v. Holman, 15 Tex.

Civ.App. 16, 39 S.W. 130, error ref.; St. Louis Southwestern Ry. of Tex. v. Kennemore, Tex.Civ.App., 81 S.W. 802, error ref.; Payne v. Doubtful, Tex.Civ.App., 236 S.W. 134, error ref.; Texas & P. R. Co. v. Duncan, Tex.Civ.App., 193 S.W.2d 431.

■ Some authorities hold there is ordinarily no duty on the part of train operatives to protect its employees in railroad yards; but, it is likewise held that such duty to exercise ordinary care for the protection of such employees might be imposed by rule or custom. Chicago R. I. & Gulf R. Co. v. Cummings, Tex.Civ.App., 107 S.W.2d 644, error dismissed. Appellant had provided for just such protection by the rule which prohibited the coupling of cars at at rate of speed in excess of four miles per hour. Appellee had a perfect right to believe the rule would be obeyed. If the rule had been obeyed, he would not have been injured. There is not only a violation of the rule in this case, but the existence of a custom which charged the switching crew with knowledge that some one might be in the caboose at the time. One of appellant's witnesses testified that even though he did not know appellee was in the caboose, or that any one else was in it, he at least on one occasion gave warning to any one who might be in the caboose on the occasion in question. Point 1 is overruled.

Appellant's Points 2, 3, 4, 5, 6 and 7 are multifarious in that each of them complains of two or more alleged errors on the part of the trial court. But a careful examination of the points reveals that appellant is complaining of the error of the trial court in entering judgment for appellee because: (1) The answers of the jury to various special issues is without any support in the evidence (no evidence); or, (2) the answer of the jury to various special issues are so contrary to the preponderance of the evidence as to be manifestly unjust and clearly wrong. We will not discuss the complaint to each of the special issues complained of because we

have carefully examined the evidence in this case and find as a fact that the answers of the jury to each of the special issues complained of by appellant are fully supported by the evidence. The points are overruled.

Points 8, 9 and 10 are without merit and they are respectfully overruled.

■ By Point 11, appellant complains of the form of the issue submitted by the trial court on the question of comparative negligence and says that the form of the issue informs the jury as to the result of their findings on contributory negligence. The authorities relied upon by appellant in fact support the form of issue as submitted by the trial court. Further, this issue was submitted conditionally and was not required to be answered unless the jury had found appellee guilty of negligence in one or more instances. The jury having exonerated appellee of any negligence, this issue went out of the case. Sunset Motor Lines v. Blasingame, Tex. Civ.App., 245 S.W.2d 288, error dismissed. The issue complained of reads as follows:

"What amount of money do you find from a preponderance of the evidence should be deducted from the amount of damages, if any, which you have found in answer to Special Issue No. 37 because of negligence, if any, of the plaintiff, Walter Robbins, proximately causing his injury?"

We think the issue conforms to the provisions of Section 53 of Title 45 of U.S. C.A. and Article 6440 R.C.S. of Texas, which provides that: "The damages shall be diminished *by the jury* in proportion to the amount of negligence attributable to such employé * * *." (Emphasis added.) Texas & P. R. Co. v. Mix, supra; and Texas & N. O. Ry. Co. v. Tiner, Tex. Civ.App., 262 S.W.2d 769, error refused. Point 11 is overruled.

■■ By Point 12 appellant complains of the action of the trial court in admitting

into evidence, over appellant's timely objection, the entire hospital records relating to appellee's hospitalization for his alleged injuries. The objection was a general objection and no particular entry or part of the record was objected to. A general objection in such instance is insufficient. American Gen. Ins. Co. v. Dennis, Tex.Civ. App., 280 S.W.2d 620, no writ history. The hospital records were fully proved. A proper predicate had been laid for the admission and it was shown that the records were kept in the ordinary course of the business of the hospital. The records were admissible. American Gen. Ins. Co. v. Dennis, supra; Article 3737e, V.A.C. S.T.; Section 1732, Title 28, U.S.Code; Smith v. Ft. Worth & D. C. Ry. Co., 5 Cir., 219 F.2d 43; Missouri K. & T. R. Co. of Tex. v. Ridgeway, 8 Cir., 191 F.2d 363, 29 A.L.R.2d 984; Shaffer v. Seas Shipping Co., 3 Cir., 218 F.2d 442, certiorari denied 348 U.S. 973, 75 S.Ct. 534, 99 L.Ed. 758. The point is overruled.

■ By Point 13 appellant complains of the use of the expression "rolling cut of cars" as used by the trial court in Special Issues 10 and 11. We are not advised of any definite meaning of the phrase "rolling cut of cars." Appellant argues from the standpoint that a "rolling cut of cars" is a cut of cars that has been "kicked" in the course of a switching operation and permitted to roll free. From the explanations, general phraseology and "railroad talk" revealed by the record in this case, a "cut of cars" is two or more railroad cars coupled together; and "kicking" is a term used when a cut of cars is being switched, the pin is pulled while the cut of cars is rolling and said cut of cars is permitted to roll free of the engine. As a matter of common knowledge, this is sometimes called a "flying switch." The jury found in response to Special Issue No. 13 that on the occasion in question the cut of cars that was being shoved was "kicked" by the locomotive. As pointed out in the case of Owen Development Co.

v. Calvert, Tex.Civ.App., 292 S.W.2d 839, error pending, it probably would have been a better practice to have submitted this issue prior to the submission of Issues 10 and 11, but we are unable to see where the submission or the form and manner in which the issue was submitted caused, or probably caused, the rendition of an improper judgment. Point 13 is overruled.

■■ At the time this cause was submitted and argued appellant requested and was granted permission to file a supplemental brief to raise the point of excessiveness of the jury verdict. Appellee did not object to the filing of such supplemental brief and the raising of such point. Appellant has presented us with a supplemental brief, but we do not think it has raised the point of error. Collins v. Smith, 142 Tex. 36, 175 S.W.2d 407; Texas Indemnity Co. v. Warner, Tex.Civ.App., 159 S.W. 2d 173, error ref., W.O.M.; Traders & Gen. Ins. Co. v. May, Tex.Civ.App., 168 S.W.2d 267, error ref., W.O.M. In the beginning of the supplemental brief counsel for appellant confesses his embarrassment at failing to raise the point and points out that it had stated in its amended motion for new trial that: "The verdict and the judgment thereon are excessive." Without specifically assigning the point of error that the verdict is excessive, appellant does argue most emphatically that such is its contention. Even though we do not think the point is raised, we have decided to pass upon the issue. Appellee was 56 years of age on the date of his injury and had a life expectancy of 17.10 years. His earnings for the two-month period next immediately preceding his injuries averaged $553.80. His annual earnings for about three years immediately prior to the accident were from $4,500 to $6,000. There has been an increase in pay for the type of work he was doing since his injuries. The highest rate of interest possible to be certain gain from investments was 3% annually at the time of the trial.

Viewing the evidence in the light most favorable to appellee, he would have a possible life-earning expectancy substantially in excess of that awarded by the jury. We think this is sufficient discussion to show that the verdict and the judgment were not excessive. Just about every phase of the law on excessive verdicts will be found in the following authorities: Missouri, K. & T. R. Co. of Tex. v. McFerrin, Tex., 291 S.W.2d 931; Texas & N. O. R. R. Co. v. Pool, Tex.Civ.App., 263 S.W.2d 582, no writ history; Thompson v. Barnes, Tex.Civ.App., 236 S.W.2d 656, no writ history; Smith & Conklin Bros. v. Griffith, Tex.Civ.App., 260 S.W.2d 705, affirmed 153 Tex. 341, 268 S.W.2d 124; Miller v. Parmenter, Tex.Civ.App., 234 S.W.2d 459, writ ref., N.R.E.; Allbritton v. Sunray Oil Co., D.C.S.D.Tex., 88 F.Supp. 54; Texas-Mexican R. R. Co. v. Bunn, Tex. Civ.App., 264 S.W.2d 518, writ ref., N. R.E.; St. Louis San Francisco Ry. Co. v. King, Okl., 278 P.2d 845. Judgments have been approved in the following cases in the amounts indicated. O'Connell v. Westinghouse X-Ray Co., Inc., Sup., 16 N.Y. S.2d 54 ($100,000); McDonald v. Standard Gas Engine Co., 8 Cal.App.2d 464, 47 P.2d 777 ($100,000); Fulton v. Choutau County Farmers Co., 98 Mont. 48, 37 P.2d 1025 ($76,112.00); Sullivan v. City and County of San Francisco, 95 Cal.App.2d 745, 214 P.2d 82 ($125,000); St. Louis Southwestern Ry. Co. v. Ferguson, 8 Cir., 182 F.2d 949 ($150,000); Western & Atlantic R. R. Co. v. Burnett, 79 Ga.App. 530, 54 S.E.2d 357 ($65,000); Gluckstein v. Lipsett, 93 Cal.App.2d 391, 209 P.2d 98 ($115,000); Delaney v. New York Central R. R. Co., D.C.S.D.N.Y., 68 F.Supp. 70 ($165,000); and McNulty v. Southern Pacific Co., 96 Cal.App.2d 841, 216 P.2d 534 ($100,000).

We have carefully examined this record and are unable to find any error that caused or probably caused the rendition of an improper judgment. Therefore, the judgment of the trial court is affirmed.